# WILLIAM L. GRISSOM v. THE STATE.

1. CHANGE OF VENUE.—Hearing an application for a change of venue on account of local prejudice, it is not only correct, but eminently proper, for the judge to receive sworn statements of reputable citizens, to inform himself of the condition of the public mind respecting the case, and thus aid the proper exercise of the discretion vested in him by the law.

2. SPECIAL VENIRE.—In a trial for a homicide committed in the city of H., a first *venire* being exhausted without furnishing a jury, the court ordered a second, which the sheriff executed by summoning residents of the city. The accused, alleging that prejudice against him prevailed in the city, moved the court to quash the return on the *venire*, and to instruct the sheriff to summon persons from the county, outside of the city. *Held*, not error to overrule the motion.

3. JUROR — BIAS. — A juror is not disqualified by an opinion formed on newspaper versions of evidence adduced at a former trial, and which, in his belief, would not influence his verdict.

4. SAME — CASE STATED. — On his *voire dire* in a murder case, a juror stated that he had read a newspaper version of the evidence adduced on the prisoner's application for bail, and had then formed an opinion on the case; that he had forgotten the evidence, but remembered his opinion; that he did not think the opinion would influence his verdict, and he would be controlled by the evidence; but if that should be the same as he had read, it would require other evidence to change the impression he had received. *Held*, that the juror was competent.

5. SAME.—But a juror would not be competent who had formed an opinion from hearing the evidence given in on a former trial; nor if he entertained a fixed belief of the prisoner's guilt.

6. SAME — MODE OF EXAMINING. — The case of *Hardin v. The State, ante,* p. 355, cited, and the ruling therein approved — that if the accused desires to cross-examine a juror on his qualifications, he may be required to do so before the State accepts or rejects the juror.

7. HOMICIDE — CHARGE OF THE COURT. — If the evidence in a murder trial makes a case which is either murder or homicide in self-defense, the law of manslaughter should not be given in charge to the jury.

8. NEW TRIAL — SEPARATION OF JURY. — Four jurors obtained from a special *venire* were accepted by the State and the defense, and then, before being sworn, were, with the consent of both parties, allowed by the court to separate and go at large, without an officer, but under instructions from the court. *Held*, that their acceptance by both parties impaneled the jurors, and when so impaneled they should, under the ·provisions of the Code, have been kept together in charge of an officer, and not permitted to separate, even with the consent of both parties; and that the separation was cause for new trial, notwithstanding the accused made no objectiom to

them when they were reconvened and sworn, and though there was no showing that they had been tampered with.

9. VERDICT. — A capital conviction should be above suspicion, and command entire confidence, to the exclusion of all doubt of the purity and integrity of the verdict.

APPEAL from the Criminal District Court of the county of Harris. Tried below before the Hon. G. COOK.

The indictment charged the appellant with the murder of Joseph W. Brown, by shooting him with a pistol, on May 25, 1877. There was no controversy as to the main fact — that about eight o'clock, P. M., of May 25, 1877, in the supperroom of the Kennedy House, in the city of Houston, Dr. Joseph W. Brown came to his death by means of a pistol-shot fired by W. L. Grissom, the appellant. He died almost instantly, from a bullet which entered on the right side of the back, took an upward direction, and came out in front and close to the junction of the arm and shoulder, its course showing, according to two physicians who examined it, that the deceased was in a leaning position when he received it.

There were several eye-witnesses of the tragedy, but no two of them concur in their accounts of what transpired immediately before it occurred. Those who testified for the State saw no provocation or occasion for it, whereas the defense produced witnesses who stated that the deceased engaged in an altercation with the accused, and was apparently reaching for a weapon, before the latter fired upon him. The jury found a verdict of murder in the first degree, a motion for a new trial was overruled, and judgment of death was rendered against the appellant.

It will be observed that the opinion of this court discloses all matters of fact involved in its rulings, and as the case goes back for a new trial, involving life, it is not deemed proper to attempt a detail of the voluminous and very conflicting testimony.

*Likens & Stewart*, for the appellant. There has never before, we venture to assert, in the courts of this, or, indeed, any other, state, been witnessed the spectacle of men summoned to serve as jurors, selected presumably from every portion of a county, as they should have been, and yet more than nine-twelfths of that number disqualify themselves upon examination touching their qualifications as jurors, by admitting a verdict already " made up " in their own judgments. This indubitable evidence of the condition of the public mind, following close upon the testimony introduced in support of the motion made for change of venue, must, beyond question, satisfy your honors that the motion should have been granted, and that its denial was error of such grave character as to warrant a prompt reversal of the judgment in this case, and the laying down by your honors of such rules of decision in motions of this character as will effectually prevent like injustice from being done to other unfortunates, whether from ignorance of the law, a too great zeal in the public service, or from whatever cause springing. That public feeling in Harris County was intensely unfriendly to the appellant, we think the testimony to be found in the record most abundantly shows.

Upon examination of this record, it will be observed that the motion was, in form, in strict conformity to law, and as to supporting affiants, thrice the number required, not one of whom was there the slightest attempt made to impeach — they were all " credible persons." In the case of *Dixon* v. *The State*, 2 Texas Ct. App. 530, on the subject of change of venue, this court says: " When the defendant applies for a change of venue on account of prejudice or combination against him, the State is entitled to disprove the alleged prejudice or combination, or to show that defendant's supporting affiants are not credible persons, such as are required in support of the application." This would very clearly seem to indicate a view of the law

which, in the opinion of counsel, is correct — that is, that in the state of case mentioned, the State, to resist the motion for change of venue successfully, *must* disprove the existence of prejudice, or impeach the credibility of supporting affiants — neither of which was done in the case at bar. There was not even an effort to impeach made, and the work of disproving the existence of prejudice was certainly a most signal failure.

The law providing for a change of venue certainly meant something — was assuredly intended to subserve some useful purpose. It either was the purpose of its makers to provide a mode of changing the venue by the applicant complying with its requirements, or it was designed to confer upon the judge the power of legislating in each case where his power was invoked. If the former, the ruling of Judge Cook upon appellant's motion was error, for the motion came to him clothed with every requirement of the law, and, indeed, much more. If the latter was its purpose, then where was the wisdom in doing more than simply declaring that the venue in causes might be changed when it happened in accordance with the personal views of the judge presiding to so order. We think that an examination of all the facts in this case will bear us out in the assertion that if there ever was a case which demanded the exercise of a reasonable degree of liberal discretion (conceding, for mere argument's sake, the matter lay in the discretion of the court), then this case stands pre-eminent in its prayer and demand therefor. And a bill of exceptions presents further error in a matter of vital importance to the appellant. It will be observed that when Mr. Ed Milby was being examined touching his qualifications as a juror, he replied to questions asked, that he had formed an opinion with reference to the guilt of the prisoner; that his opinion was based upon the testimony heard and read by him; that he remembered what the opinion was; *that it would re-*

*quire other testimony to remove or alter that* opinion; but that he thought he could give the prisoner a fair and impartial trial, notwithstanding the pre-existing opinion. The State accepted the juror; the defendant challenged the juror for the cause of his formed opinion; the challenge was refused, and the court declared the juror competent, and the defendant was, in the exercise of a reasonable prudence, compelled to peremptorily challenge the juror, which, with other challenges, resulted in exhausting the challenges of appellant before the jury was complete, thereby forcing upon him objectionable persons. Our organic law provides that " in all criminal prosecutions the accused shall have a speedy public trial, by an impartial jury." To insure impartiality on the part of jurors, the accused is given, by law, the right to challenge twenty of the persons summoned as jurors, without assigning any cause therefor. This right is not exercised unless there be a necessity for it. There is no necessity for its exercise when cause of challenge exists. And when such cause of challenge does exist, and the accused is nevertheless, by the action of the court, forced to challenge peremptorily, he is deprived of a valuable right, and of such an unfortunate it cannot be said that he has been tried by " the due course of the law of the land."

To hold the reverse of this, and act upon the conviction, would be but a mere mockery of a solemnly-declared constitutional right. The State has, in all conscience, already its due proportion of rights and advantages as against the accused of its citizens, without, at this late day in the history of trials by jury, conceding to it the right of selecting jurors whose minds are made up in its behalf; and if the ruling of Judge Cook is to be the declared law of the land, then the vaunted bulwark of the citizen's life and liberty becomes the veriest engine of oppression ever devised by the mind of man.

We understand very well that the mere hearing of the

testimony that was offered on a former trial will not be sufficient cause of challenge, as this court has decided in *Purchman* v. *The State*, 2 Texas Ct. App. 228, and in *Brill* v. *The State*, 1 Texas Ct. App. 576. But if hearing the testimony has produced a lasting impression on the mind of the juror; has induced him to arrive at conviction of the guilt or innocence of the defendant; that he retains that conviction to such an extent as will require other and further testimony to remove that conviction, we then understand that there is " in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as will influence him in his action in finding the verdict," and the challenge for cause should be sustained; and to refuse him the challenge for cause is to deny him one of the most valuable rights accorded to him by the law.

In the case of *Speer* v. *The State*, 2 Texas Ct. App. 246, this court held that not to give the defendant in a capital case one entire day's service of a copy of the names of persons summoned under a special *venire facias* to try him, was a deprivation of an important right, for which the cause was reversed. We think it will hardly be questioned by any one of any experience or observation in the trial of capital cases that the deprivation of a peremptory challenge is the denial of an " important right," and is a " material error, calculated to injure the rights of the defendant." Pasc. Dig., art. 3137.

In regard to the question discussed under this assignment, we refer the court to the case of *Black* v. *The State*, 42 Texas, 377, and authorities there cited.

*J. W. Jones* and *Barziza & Oliver*, for the State, filed an able and apposite argument on the several questions raised by the assignment of errors.

*H. H. Boone*, Attorney-General, for the State. The

substance of the affidavit as to the separation of the jury is that four designated jurors did separate, by permission of the court, and go to their respective places of abode, on the night of February 26, 1878, having first been instructed by the court not to have any conversation with any one in regard to the cause; and that they had obeyed the instructions of the court.

It is not claimed that there was any misconduct on the part of the jurors; that they had disobeyed the instructions of the court; that they had in any manner abused the permission of the court; or that any one had sought, or attempted in any manner, to take advantage of it, to the prejudice or injury of defendant. So that the naked question is whether the mere fact that the jurors were allowed to separate in the manner and under the circumstances was such error as will require the reversal of the case.

It will be observed by the court that the jury had not been impaneled and sworn, and, hence, the permission granted the four to separate does not come under the inhibition of the Code (1 Pasc. Dig., art. 3070), and it can certainly afford no ground for a reversal of the judgment unless there is some good reason to infer that wrong or injustice resulted from it, and unless the court is of opinion that, *ipso facto*, the separation, under the circumstances and at the time, was misconduct in the jury, and that from such misconduct the appellant has not received a fair and impartial trial. The record does not show the slightest reason to suppose that there was any actual misconduct on the part of these four jurors during the time they were permitted to separate. On the contrary, it affords the most satisfactory evidence that there was no misconduct on the part of those jurors at the time, or at any other time during the trial. Indeed, there is no pretense that there was any actual misconduct on the part of any of the jury at any time during the trial. *Jenkins* v. *The State*, 41 Texas, 132;

*Wakefield* v. *The State*, 41 Texas, 556 ; *Johnson* v. *The State*, 27 Texas, 164 ; *Early* v. *The State*, 1 Texas Ct. App. 271.

In the last case this court, in reviewing the cases of *The State* v. *Nelson*, 32 Texas, 71, and the two cases cited *supra*, in 41 Texas, says : " We will remark, however, that in each of these cases it appears that the separation was that of one or more individual members of the jury, and under such circumstances as rendered it improbable, if not impossible, that, independent of their own evidence, they could have been tampered with." And in those cases the separation complained of occurred after the jury had been impaneled and sworn, and after the case had been committed to them.

And in that case this court further says : "As a general rule, applicable alike to all kinds of irregularities in the conduct of the jury, we copy and approve as correct the following extract from the opinion of Shaw, C. J., in *The Commonwealth* v. *Roby*, 12 Pick. 496 : ' The result of the authorities is that, when there is an irregularity which may affect the impartiality of the proceedings — as, where meat and other refreshments have been furnished by a party, or where the jury have been exposed to the effect of such influences, or have had communications not authorized — there, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what is thus improperly, and may have been corruptly, done ; or, when the irregularity is in doing that which may disqualify the jurors for proper deliberation and exercise of their reason and judgment — as, where ardent spirits are introduced — then it would be proper to set aside the verdict, because no reliance can be placed upon its purity and correctness. But when the irregularity consists in doing that which does not, and can not, affect the impartiality of the jury, or disqualify

them from exercising the powers of reason and judgment —
as, where the act done is contrary to the ordinary forms and
to the duties which jurors owe to the public — the mode of
correcting the irregularity is by animadversion upon the
conduct of the jurors, or of the officers; but such irregu-
larity has no tendency to impair the respect due to such ver-
dict.    Another general rule which we think may be safely
deduced from the weight of authorities upon this subject is
that a separation of the jury before bringing in their ver-
dict in a capital case does not, *per se*, render the verdict
void, but such verdict will be set aside, or not, according
to circumstances.''    1 Texas Ct. App. 275; 2 Gra. & Wat.
on New Tr. 491 *et seq.*

ECTOR, P. J.    The defendant was indicted in the Criminal
District Court of the county of Harris, on June 13, 1877,
for the murder of Joseph W. Brown.    The indictment
charges that the murder was committed on May 25th
of the same year.    He was tried at the February term,
1878, of said court, convicted of murder in the first degree,
and his punishment assessed at death.

A motion was made for a change of venue, supported by the
affidavits of the defendant and of five other citizens of Harris
County.    The change of venue was asked upon the ground
of prejudice in Harris County against the defendant.    In
order to determine the truth and sufficiency of the grounds
alleged, the court caused the affiants to be sworn touching
their means of knowledge of the facts stated in their affi-
davits.    Then nine other citizens, from different parts of
Harris County, were called by the State, and were sworn
and examined for the purpose of negativing the allegations
of the supporting affidavits.    The court, after weighing the
direct and counter-affidavits, overruled the motion.

The case of *Noland* v. *The State*, 3 Texas Ct. App. 598,

is decisive of the question as to the change of venue. We make the following extract from the opinion of the court in that case, to wit:

"Applications of this character must of necessity be confided, under the law, to the discretion of the judge who presides at the trial; and unless it should be made to appear that this discretion has been abused or arbitrarily exercised, and to the prejudice of the accused, or so as to deprive him of some legal right, this court would not be warranted in interfering with his action. Still, such action is subject to revision on appeal."

While it is the duty of the court to guard well all the rights of the defendant in a criminal case, it is not required, nor would it be good policy, to exclude well-established facts bearing upon the motion, nor to compel the court to change the venue at the mere whim of a person charged with crime. When an application is made for a change of venue in a criminal case, on account of local prejudice, it is not erroneous, but is eminently proper, for the judge to receive the sworn statements of reputable citizens, to aid him in the exercise of the discretion confided to him by the law. It certainly cannot be error for the judge to hear evidence for and against the application, and fully inform himself of the condition of the public mind in the locality. After a careful and dispassionate examination of the conflicting evidence upon the motion to change the venue in this cause, we believe that the presiding judge did not err in overruling the motion.

The second error assigned is that "the court erred in refusing to quash the second *venire facias*."

After the original *venire facias*, upon which were returned sixty names, was exhausted, the sheriff was ordered to summon sixty other jurors, which he did, and, having returned a list of their names, defendant, by his counsel, moved the court to quash the *venire facias*, "because all

the persons so summoned resided in the city of Houston, where it had been shown great prejudice existed now, and had existed, against the defendant, and requested the court to direct the sheriff to go out of the city limits, to the country, in the county of Harris, and summon jurors;" which the court refused to do.

By this ruling of the court the defendant was deprived of no legal right. It does not appear from the record that the defendant's counsel asked the court to instruct the sheriff, in summoning these men, to go to the country for jurors, when he was ordered to summon sixty other jurors. The defendant's counsel does not state that any of the jurors were summoned in the court-house, or in the court-house yard. After the exhaustion of the second *venire* of sixty men, the jury still not being complete, the court ordered the sheriff to summon thirty-five men, competent jurors, and directed him to go to the country for them. The mere fact that the court so instructed the sheriff, when ordered to summon this last *venire* of thirty-five men, does not show why such order should have been given to the sheriff before. We do not believe that the second assignment of error is well taken.

In selecting the jury, Mr. Ed Milby was called, and, upon oath, examined touching his qualifications to serve as a juror; and, in reply to questions propounded by the defendant's counsel and the court, stated as follows: "I read the evidence, published in the newspapers, that was taken or heard in this cause when Grissom applied for bail, and formed an opinion at the time as to his guilt or innocence, and I remember what my conviction was on the subject, but do not now remember the evidence, but do remember the opinion I then formed. I do not think the opinion then formed would influence my action in finding a verdict. I think I would be controlled by the testimony I heard on the trial; but if the testimony was the same as I read, my conviction

would be the same, and it would require other testimony to change the impression I received from reading the testimony." The State having accepted the juror, the court declared the juror competent, and required the defendant to pass upon him; whereupon the defendant excepted to said ruling of the court, and peremptorily challenged the juror. Upon the trial of the cause the defendant exhausted his peremptory challenges to jurors. This action of the court in declaring Mr. Ed Milby a competent juror, and which caused the defendant to peremptorily challenge him, is made the third assignment of error. After a careful examination of the authorities, we believe that Mr. Ed Milby, by his answers, showed himself to be a competent juror.

An opinion as to the guilt or innocence of the defendant, formed from newspaper accounts alone, and which, in the belief of the person so expressing it, would not have any influence on him in the trial of the cause, does not disqualify him to sit as a juror. The ruling of the court in passing upon this juror was in full accord with decisions in most of the American courts of last resort. It is in vain, in the presence of a telegraph that throbs with every beat of the world's life, and a daily press to register each pulsation, for courts longer to expect ignorance of a notorious fact combined with general intelligence. Ignorance of a matter made notorious by publication will seldom be found where sufficient discrimination exists to detect falsehood from truth. The rapidity with which information is conveyed, and the haste to place it before the public, involve so much uncertainty and inaccuracy in its statement that experience soon instructs the reader, and the impression formed fades at once before the living witness. An impression so left is practically harmless, and at this day a theory which rejects such jurors cannot be sustained in practice.

The Supreme Court of Pennsylvania, in the case of *Staup* v. *The Commonwealth*, says: "At the present day, when

newspapers, railroads, and telegraphs have made intercommunication easy, and when reporters are alive to every occurence, and the daily press eager to serve up the details of crime, the difficulty of obtaining jurors free from those wide-spread influences has made courts less ready to listen to this cause of challenge. In the contrariety of opinions prevailing, it is needless to look abroad for precedents, but rather to be guided by the reason lying at the bottom of the right of challenge. The great purpose of this right is to secure a fair and impartial trial. Chief Justice Marshall said, in the trial of Aaron Burr for treason, that ' the court has considered those who have deliberately formed and delivered an opinion on the guilt of the prisoner, as not being in a frame of mind to weigh the testimony, and, therefore, disqualified to sit as jurors in the case.' 1 Burr's Trial, 367. Chief Justice Taney laid down the following test, says Mr. Wharton, in his treatise on Criminal Law (sec. 2981) : ' If the juror has formed an opinion that the prisoners are guilty, and entertains that opinion now, without waiting to hear the testimony, then he is incompetent. But if, from reading newspapers or hearing reports, he has an impression in his mind unfavorable to the prisoner, but has no opinion or prejudice which will prevent him from doing impartial justice when he hears the testimony, then he is competent.' " 74 Penn. 460. See, also, *Thomas* v. *The People*, 67 N. Y. 218.

Whenever the opinion of the juror has been formed upon the evidence given in the trial at a former time, or has been so deliberately entertained that it has become a fixed belief of the prisoner's guilt, it would be wrong to receive him. In such a case the bias must be too strong to be easily shaken off, and the prisoner ought not to be subjected to the chance of conviction it necessarily begets. But when the opinion is founded on rumor, or newspaper reports, which the juror says will not influence his action in finding

a verdict, and that he can fairly try the prisoner on the evidence, freed from the influence of such opinions or impressions, he ought not to be excluded. If exclusion must follow from such unsettled convictions, it would frequently be no easy matter to obtain a jury.

This court, during its present term, in the case of *Hardin* v. *The State*, has already passed upon the question raised by defendant's objections to the mode of conducting the examination of jurors touching their qualifications as jurors. *Ante*, p. 350. The fourth assignment of error was not well taken.

The court did not err in refusing to give the instructions asked by the defendant. The presiding judge had already given such a charge as would enable the jury to apply the law to every legitimate deduction which could be drawn from the facts adduced in evidence. Some of the instructions asked had been substantially given in the main charge of the court, and others were not applicable to the evidence. This, as shown by the evidence, was either a case of murder or of homicide in self-defense. A charge on the subject of manslaughter would have been improper. There was no evidence before the jury requiring such an instruction.

This, in our judgment, brings us to the most material question presented in the record. The sixth error assigned is that "the court erred in permitting the jurors H. R. Allen, T. W. Cronin, A. Teichman, and Henry Addicks, after they had been accepted as jurors, to separate, on the night of February 26, 1878, as shown in motion for a new trial and affidavits thereto appended, and filed herein."

On February 26, 1878, as appears from the record, the *venire* being called, and the jury not having been completed, the court proposed to allow the four jurors selected to separate, under instructions from the court; and counsel for the State consenting, and the defendant's counsel an-

swering that he interposed no objection, H. R. Allen, T. W.
Cronin, A. Teichman, and Henry Addicks, who had been
selected to serve as jurors, were allowed to separate, under
instructions from the court, until the next morning at ten
o'clock, to which hour the court adjourned, and a special
*venire* for sixty jurors was ordered to issue.   On the morn-
ing of February 27th, after the court was opened, the said
four jurors who on the evening before were permitted to
separate, under instructions from the court, being present,
were sworn to answer questions truly, and being asked by
the court if they, or either of them, had had any communi-
cation with any one upon the subject of this case, answered
that they had not; and if their minds were in the same con-
dition as to this case as when they separated on yesterday,
and having answered that they were, the court then ten-
dered counsel for the State and defendant an opportunity to
further examine them if they saw proper, and, no objection
being made, they were instructed to resume their seats;
whereupon the district attorney, for the State, said, in open
court, that he would make no objection to setting aside the
four persons heretofore named, if desired, to which the
court said defendant, by himself or counsel, was not re-
quired to answer, unless he saw proper.   And, there being
no answer, the call of the *venire* was proceeded with; and
the record shows that the said Allen, Cronin, Teichman,
and Addicks were four of the twelve jurors that tried this
cause.

Counsel for the State, in their able oral arguments and
their briefs, insist that the four jurors named had been ac-
cepted, but had not been sworn to try the case, and that
until they had been sworn to try the case, the law did not
require them to be kept together; and that the separation
of a jury in a felony case, by consent of parties, does not
vitiate a verdict.

· We believe that when the jurors were accepted by the

State and the defendant, they were impaneled; that when impaneled, they should have been kept together, in charge of an officer, and not allowed to talk with any other person, except in the presence, and by permission, of the court; and that they should not have been allowed to separate by consent of counsel on both sides.

The Code of Criminal Procedure provides as follows:

"Article 3070 [Pasc. Dig.]. After a jury has been sworn and impaneled to try any felony case, they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with consent of the district attorney and the defendant, and in charge of an officer."

Article 3072. "The sheriff shall take care that no person converse with a juryman after he has been impaneled to try a criminal action, except in the presence, and by permission, of the court."

When a man is on trial for his life, as was said by this court in the case of *Early* v. *The State*, 1 Texas Ct. App. 277, there should be no room for doubt as to the purity and integrity of the verdict. It should be above suspicion, and command entire confidence. The opportunities for improper influences, even if not improved, were so great that they will be presumed by the law in favor of human life. In a case of such magnitude the convenience of jurors is not to be consulted, and the defendant should not be deprived of the safeguards that the law throws around all persons being tried for crime, to secure them a fair and impartial trial. All defendants alike should have a fair trial, according to the laws in force, and then, when they are convicted, the judgment should be affirmed. But if the record, on appeal, in any case of felony, shows that a defendant has been deprived of any legal right, the verdict and judgment of conviction should be set aside and a new trial be granted.

It is true, in the case at bar there was no effort made by

the defendant to show that the four jurors who were allowed
to separate after they were impaneled were tampered with,
or influenced unfavorably towards him, during their separa-
tion ; nor was it incumbent on him to show that such were
the facts, in his application for a new trial. It is sufficient to
show that an opportunity existed for such misconduct, which
the record herein most conclusively and abundantly does
show. In the administration of justice, it sometimes hap-
pens that public clamor demands of the courts, not a just
and impartial administration of the law, but aid in secur-
ing, through legal forms, some victim to popular indigna-
tion. As was said in the case of *Morgan* v. *The State*, 31
Ind. 196, by Ray, J.: "It were better that the mob
should execute its will, terrible as the alternative may be,
than that a judge should yield one right secured to the
prisoner by the law. The court, when the excitement is
passed, will retain the public confidence in its due and
proper administration of the law — a loss of which would
be irreparable. The excess of popular violence, although
it cannot correct the injustice it may have worked, will
bring an assured repentance."

We believe that the court erred in refusing the defendant
a new trial on account of the separation of the four jurors ;
and for this alone the judgment must be reversed and the
cause remanded.

*Reversed and remanded.*