EDWIN THOMAS, Plaintiff in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

The provision of the act of 1872 (chap. 475, Laws of 1872), providing that a present opinion or impression in reference to the guilt or innocence of a prisoner, or the expression of such an opinion, shall not, in the cases specified, be a sufficient ground of challenge for principal cause, does not interfere with or affect the challenge for favor.

Under the provisions of the act of 1873 (chap. 427, Laws of 1873), providing that either party may except to the determination of the court upon a challenge for favor, and that the court may review such decision upon writs of error or *certiorari*, this court, upon writ of error, has the same power to pass upon the question involved in the challenge which the trial court had.

A person, called as a juror upon the trial of an indictment for murder, being challenged, testified that he had heard the killing talked about, had expressed an opinion, and then had an impression or opinion, depending upon the truth of what he had heard; that he thought it would take evidence to remove that impression; but that he would decide the case on the evidence; and believed that he could render an impartial verdict upon the evidence, unbiased by such opinion. *Held*, that the trial court was justified in holding the juror indifferent.

Upon the trial, the prisoner offered to prove that the deceased had been engaged in several fights with other parties, in each of which he used a knife, and cut his opponent; also, declarations of his as to his cutting people with razors, and that all these matters had been communicated to the prisoner; the offers were overruled. *Held*, no error.

After a witness on the part of the prisoner had testified that he heard the deceased, in an angry dispute, say to the prisoner that, if he ever crossed his path again, he would fix him, the prisoner offered to show that, a few days afterward, the witness heard another person, who was present when the threat was made, state to the prisoner what the deceased threatened. The proof was excluded. *Held*, no error; as there was no suggestion that the prisoner did not hear the threat when made, or had forgotten it.

After a witness had testified that the prisoner was a quiet man and good natured, as far as he knew, he was asked to "state what his disposition was when crossed or misused?" This was objected to, and excluded. *Held,* no error.

The crime charged was committed in State prison, where the prisoner and the deceased were confined. The prisoner gave evidence tending to show that the character of the deceased, before he came to the prison, was bad; that he was quarrelsome and vindictive. The prosecution then called witnesses, who were permitted to testify, under objection, that, in the respects stated, his character while in prison was good. *Held,* no error.

The homicide was committed with a case knife, which the prisoner, a few days before, had ground to a point. He testified that he knew where the heart was located, and that he stuck his knife into it. The court charged, among other things, in substance, that the facts that the prisoner used a deadly weapon, and struck at a vital part of the body of the deceased, are circumstances furnishing presumptive evidence of an intent to take the life of the deceased, but not conclusive. *Held,* no error.

At the time of his conviction, the prisoner was under sentence for a term, several years of which were unexpired. *Held,* that this did not prevent his being sentenced to be hung before the expiration of his term.

(Submitted October 2, 1876; decided November 14, 1876.)

ERROR to the General Term of the Supreme Court in the fourth judicial department affirming a judgment of the Court of Oyer and Terminer in and for the county of Cayuga, entered upon a verdict convicting plaintiff in error of the crime of murder in the first degree.

The prisoner and Richard Sheffield, the deceased, were convicts confined in Auburn State prison. The homicide was committed, in one of the shops of the prison, with a case knife, which the prisoner had previously ground down to a point; this he plunged into the heart of the deceased.

The facts pertinent to the different questions presented are set forth sufficiently in the opinion.

*John T. Pingree* for the plaintiff in error. The court erred in overruling the challenge for principal cause, and to the favor interposed to the juror De Witt. (Laws 1872, chap. 475; Laws 1873, chap. 467, p. 681; *Cancemi* v. *People,* 16

N. Y., 504.) The court erred in rejecting evidence of state-
ments of Sheffield as to his character and disposition for reck-
lessness of human life. (*Pformer* v. *People*, 4 Park. Cr.,
568; *Comm.* v. *Hilliard*, 2 Grey, 294.) The sentence pro-
nounced was illegal and void. (5 N. Y. Stat. [Edm. ed.], 172;
1 Bishop. Cr. L. [5th ed.], § 953; *King* v. *Bath*, 1 Leach
[4th ed.], 441; *Russell* v. *Comm.*, 7 S. & R., 489; *Miller* v.
*Finkle*, 1 Park. Cr., 374; *Dawson* v. *People*, 25 N. Y., 405.)

*S. E. Payne* for the defendants in error. The ruling of the
court, as to the prisoner's challenge to the juror for the prin-
cipal cause, was proper. (1 Laws 1873, chap. 475, p. 1133;
*Sanchez* v. *People*, 22 N. Y., 151; 4 Park Cr., 535.) The
offer to show specific acts on the part of Sheffield was properly
rejected. (*Eggler* v. *People*, 56 N. Y., 643; 2 Gray, 294.)
The judge did not err in charging the jury that they could
consider the character of the weapon used by the prisoner.
(*Stokes* v. *People*, 53 N. Y., 180; *McCann* v. *People*, 6 Park.
Cr., 630; *Foster* v. *People*, 50 N. Y., 608; *People* v. *Clark*,
7 id., 391; 27 How., 207; 13 Abb. Pr. [N. S.], 370, 378.)

EARL, J. The plaintiff in error was convicted of murder
in the first degree for killing a fellow-prisoner in the Auburn
State prison with a knife. The prisoner's counsel upon the
trial took several exceptions to the rulings of the court, which
are presented here as grounds for a reversal of the conviction,
and I will examine them separately in the order in which
they are presented.

First. Upon the trial George J. De Witt was called as a
juror and was challenged by the prisoner for principal cause,
and upon being sworn testified that he had heard the killing
talked about, had expressed an opinion of the affair from what
he had heard talked, and then had an impression or opinion
as to the guilt or innocence of the prisoner if what he had
heard was true; that he thought it would take evidence to
remove that impression and that he would not go into the
jury box entirely unbiased; that the impression depended

entirely on the supposition that what he had heard was true; that if he went into the jury box he would decide the case on the evidence given, and that he believed if he was sworn as a juror he could render an impartial verdict upon the evidence unbiased or uninfluenced by any impression or opinion which he then had. The court then overruled the challenge. The prisoner then challenged the juror for favor and that challenge was also overruled, and prisoner's counsel excepted to each ruling and De Witt was then sworn as a juror.

The challenge for principal cause was properly overruled under the act, chapter 475 of the Laws of 1872. That act provides that a present opinion or impression in reference to the guilt or innocence of the prisoner, or the expression of such an opinion, shall not be a sufficient ground of challenge for principal cause, provided the person proposed as a juror shall declare on oath that he verily believes that he can render an impartial verdict according to the evidence and that such opinion or impression will not bias or influence his verdict, and provided the court shall be satisfied that the person does not entertain such a present opinion as would influence his verdict as a juror. This provision has relation only to the challenge for principal cause and removes one of the grounds therefor in the cases mentioned. The challenge for favor is left unaffected by that act. Such a challenge is to determine the indifferency of the person proposed as a juror, and is now by the act chapter 427 of the Laws of 1873, to be tried by the court instead of triers as before provided. Before that act the decision of the triers as to indifferency was final, and not the subject of review. (*Sanchez* v. *The People*, 22 N. Y., 147.) But by that act it is provided that *either party* may except to the determination of the court upon the challenge and "upon writ of error or *certiorari*, the court may review any such decision the same as other questions arising upon the trial." What is the effect of this provision? Under the prior law, while the decision of the triers was final, a bill of exceptions would lie to bring up for review any exception taken to the ruling of the court in reference to such challenge or the

admission or exclusion of evidence before the triers. (*People*
v. *Rathbun*, 21 Wend., 509; *Sanchez* v. *People, supra.*)
This provision was not therefore intended for such exceptions,
but manifestly to give the court upon writ of error or *cer-
tiorari* the power to review the decision of the trial court
upon the question of indifferency, a power not before possessed.
After the previous act as to the challenge for principal cause,
it was doubtless deemed important that the courts of review
should possess this additional power. We have, therefore,
the same power to pass upon the question involved in the
challenge for favor which the trial court had, and the question
to be determined is, was the juror indifferent within the rule
of law applicable to such a case? He had heard the matter
talked about and had an impression or opinion as to the guilt
or innocence of the prisoner. That impression or opinion
depended upon the truth of what he had heard; and he testi-
fied that he would decide the case upon the evidence, and that
he believed that he could render an impartial verdict upon the
evidence, unbiased and uninfluenced by his impressions. Upon
such a state of facts, the court properly held the juror indiffer-
ent. At least we cannot say that the court having the juror
in its presence, and able to judge somewhat from his appear-
ance, erred in its decision. He had an opinion which depended
upon the truth of what he had heard. As a juror he was to
find the truth of the case, and such an opinion as he had would
in no way interfere with his impartial search after it. The
exclusion of a juror in such a case, in these days of general
intelligence and newspaper circulation, would render it imprac-
ticable in many cases to obtain a competent jury for the trial
of persons charged with flagrant and notorious crimes. (*The
People* v. *Honeyman*, 3 Denio, 121; *Lohman* v. *The People*,
1 N. Y., 379.)

Second. Upon the trial the prisoner was permitted to prove
threats and acts of violence toward himself by the deceased,
and also to prove that the general character of the deceased
was bad; that he was very quarrelsome and vindictive. He
offered to prove, also, that before he came to the prison, the

deceased was engaged in several fights with other parties,·in each of which he used a knife, and cut his opponent; also his declarations about cutting people with razors, and that all these matters had been communicated to the prisoner. These offers were overruled, and this is now complained of as error. Even if the proof given of the general character of the deceased was competent upon the facts of this case, there is no authority for holding that proof of specific acts of violence upon other persons, no part of the *res gestæ*, and in no way connected with the prisoner, was competent. Such proof was held to be incompetent in *Eggler* v. *People* (56 N. Y., 642).

Third. A witness on the part of the prisoner testified that he heard the deceased in an angry dispute say to the prisoner that if ever he crossed his path again, he would fix him. The prisoner then offered to show that a few days afterward the witness heard another person, who was present when the threat was made, state to the prisoner what the deceased had threatened on that occasion to do. The offer was excluded. It is difficult to perceive how it could be important to prove the repetition to the prisoner of a threat which was made in his presence, to him, and of which, therefore, he had information. There was no suggestion that the prisoner did not hear the threat when made, or that he had forgotten it. There was no error in the exclusion of the offer.

Fourth. After a witness had been permitted to testify that the prisoner was a quiet man, and good natured so far as he knew, he was asked the following question : "State what his disposition was when crossed or misused ?" This question was properly excluded. No ground was stated at the time upon which it was claimed to be competent, and it is impossible to perceive any. If the answer had been that he was quarrelsome, it would certainly not have aided him; if it had been that he was peaceful and submissive, it would have done him no good, as there is no pretence that he was either peaceful or submissive under any provocation he received at the time of the homicide.

Fifth. The prisoner gave evidence tending to show that the

general character of the deceased, before he came to the prison, was bad; that he was very quarrelsome and vindictive. The prosecution then called several witnesses who had known the deceased while he was in prison, and they were allowed to testify, against the objection of the prisoner, that, in respect to quarrelsomeness and vindictiveness, his character, while in prison, was good. The ruling admitting this testimony is complained of as erroneous. The prisoner having attacked the character of the deceased, and thus opened that issue, cannot complain that evidence was received on both sides of it. It matters not that the witnesses had only known the deceased in the prison; there was a large community there, and a man can have a general character there as well as elsewhere; and it is just as competent for witnesses to speak of that character there where they have become acquainted with it, as at any other place. The evidence may not be entitled to much weight, as a very bad man may behave well under compulsion in prison, but there can be no doubt of its competency.

Sixth. The homicide was committed with a case knife which, a few days before, the prisoner had ground to a point. He testified that he knew where the heart was located, and he struck his knife into it. The judge charged the jury, explaining the different degrees of murder, justifiable and excusable homicide and manslaughter, and then, among other things, said to the jury: "The character of the weapon is one strong circumstance in the case; the procurement and preparation of the weapon would be a strong circumstance if you found it was procured and prepared shortly before this life was taken. The fact that this weapon was a deadly weapon, that it was struck at a vital part of the frame of the deceased, is a circumstance you have a right to consider, and must consider, in determining the character of this act; and I charge you that the fact that this prisoner used a knife, which was in itself a deadly weapon, and that he struck a blow at the vital part of the deceased, are circumstances which furnish presumptive evidence of an intention, at the time, to take the life of the deceased; it does not establish the fact; you might find the

contrary, notwithstanding that evidence being in the case, and yet it furnishes presumptive evidence; it is evidence from which such conclusion might be drawn, according as the jury shall find from all the circumstances of the case. The fact that this was a deadly weapon would furnish some presumptive evidence, and the manner in which it was used some presumptive evidence of an intent, at the moment, to take life. The mere use of the deadly weapon would not in itself furnish evidence of a premeditation and deliberate purpose to take the life entertained beforehand."

The prisoner's counsel excepted to that part of the charge wherein the judge charged that the deadly weapon furnished some presumptive evidence and the manner in which it was used — some presumptive evidence of an intent to take life; and also to that part of the charge that the fact that the prisoner used a deadly weapon and struck a blow at the vital part of the deceased are circumstances which furnish presumptive evidence of an intention to take the life of the deceased.

The exception is not well taken. This portion of the charge was simply upon the fact of killing and the intention to kill. The fact that the prisoner plunged this pointed knife into what he knew to be a vital part of the body must raise a presumption that he intended to take life. Its natural result would be to destroy life, and he must be presumed to have intended the natural consequence of his act just as if he had aimed at the heart of the deceased and fired a gun. It was not charged that the evidence was conclusive, but simply that it was presumptive, and it was left to the jury to determine the fact upon the evidence under the charge as given.

Seventh. At the time of his conviction the prisoner was under sentence in the State prison for a term, several years of which were unexpired, and the claim is made that he could not be sentenced to be hung before the expiration of his term. This is a novel claim, and seems to be based upon the idea that a prisoner under sentence has a right to serve out his term. He has no such right. His term of service may be curtailed by legislation or by executive pardon, or he may be turned

loose by the courts or the prison officials without violating any of his legal rights.

Convicts, like other persons, are under the protection of the law and are amenable to its penalties. The laws for the punishment of crimes are general and apply to all persons in the State. Provision is made (Laws of 1847, chap. 4) for taking prisoners out of the State prison for trial upon any indictment found against them. In all cases but such crimes as are punishable with death there is no practical difficulty, as the sentence in any case may provide that the term shall commence after the expiration of the former term. (1 Bishop on Cr. Law [5th ed.], § 953.) Even in such cases, if the sentence should go into immediate effect, it is not apparent how any right of the prisoner would be violated, or what ground of complaint he would have. It certainly would be no detriment to him if he could serve out both sentences by one imprisonment. But in the case of a conviction for murder in the first degree, the court is required to proceed and pass sentence which must be executed in not less than four and no more than eight weeks thereafter. (2 R. S., 658.) It matters not whether this law is directory or mandatory. It is the duty of the court to obey it ; and it follows that neither the prisoner's rights nor the laws were violated in the sentence passed in this case. To hold otherwise would give a life convict unlimited license to murder without further punishment.

Having thus given this case the careful consideration its grave nature demands the conclusion is reached that the judgment must be affirmed.

All concur ; CHURCH, Ch. J., not voting ; RAPALLO, J., absent.

Judgment affirmed.