Bradley PROCTOR, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10112.

Court of Appeals of Alaska.

July 23, 2010.

Beth G.L. Trimmer, Assistant Public Advocate, and Rachel Levitt, Public Advocate, Anchorage, for the Appellant.

Terisia K. Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Richard A. Svobodny, Acting Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## *OPINION*

BOLGER, Judge.

Bradley Proctor was convicted of two counts of assault after a jury trial in which he claimed self-defense. On appeal, Proctor argues that the trial judge should not have admitted testimony about his reputation for violence in prison. We conclude the judge could reasonably conclude that the prison population was a group with whom Proctor habitually associated and that the admission of this evidence did not violate Proctor's right to cross-examination.

Proctor also contends that the judge should not have allowed one alleged victim to testify using diagrams she prepared after she was present for the other victim's testimony. We conclude that the judge was not required to exclude the testimony of the alleged victim or limit her use of these diagrams.

### *Background*

Sharon Lamar and Jennifer Putnam lived together in an apartment near Bradley Proctor. Both women are deaf and communicate using sign language.

On December 11, 2005, Proctor and Putnam went to two bars, then returned to Proctor's apartment, where they used cocaine. Lamar testified that she went to Proctor's apartment to urge Putnam to come home. Proctor convinced Lamar to purchase some cocaine for him. Lamar returned with the cocaine, but Proctor became angry, saying that it tasted like soap. Lamar tried to calm Proctor down, but he hit her in the mouth. Putnam then tried to separate the two, and Proctor broke her nose. Proctor told the women to clean up the blood, but Putnam's nose continued to bleed.

Lamar testified that Proctor locked the front door and moved a chair against the door to keep them from leaving. When Lamar tried to call for help, Proctor started kicking her face and body. At one point, Proctor held both women in choke holds until Putnam passed out.

In his defense, Proctor gave a different version of the events. He testified that Lamar came to the apartment and tried to get Putnam to come home. Lamar became so loud that Proctor asked her to leave. But Lamar returned, kicked in the door, and then grabbed a steak knife and attacked Proctor. Proctor testified that while he was trying to defend himself, Putnam began hitting him with a small coffee table, and he backhanded her in the nose.

Troy Hall, Proctor's neighbor, testified that he was awakened by loud banging sounds. Hall recognized Proctor's voice repeatedly yelling "Do you want to die?" Hall also heard another voice, muffled but screaming "No, no, please stop, no, no, no." Hall banged on Proctor's door and Proctor came out yelling incoherently. While Hall was calling the police, one woman came crawling out of Proctor's apartment. Proctor stomped on her back and began slamming her head into the entryway floor. Then a second woman came out of Proctor's apartment and fell down.

When the police arrived, the women were bloody and laying face down in the snow. Lamar and Putnam were taken to the hospital and Proctor was taken into custody.

Proctor's charges included first-, second-, and third-degree assault of Lamar,[1] and first- and second-degree assault of Putnam.[2] The jury found Proctor not guilty of the assaults against Putnam and not guilty of the first-degree assault of Lamar, but they convicted Proctor of second- and third-degree assaults against Lamar.

At sentencing, Superior Court Judge John Suddock rejected Proctor's proposed mitigating factor, and sentenced him to 10 years' imprisonment. Proctor now appeals.

### *The Trial Court Did Not Abuse its Discretion by Allowing Two Correctional Officers to Testify About Proctor's Reputation.*

■ Midway through the presentation of the State's case, Proctor's attorney advised the court that the State intended to call correctional officers to testify about Proctor's propensity for violence. Defense counsel ob-

---

1. AS 11.41.200(a)(1)-(3); AS 11.41.210(a)(2); and AS 11.41.220(a)(1)(B).

2. AS 11.41.200(a)(1)-(3); AS 11.41.210(a)(2).

jected to this proposed testimony, which would be based on four or five incidents in which Proctor had been punished for assault or fighting during his incarceration prior to trial. The attorney also requested a short continuance so that he could prepare his cross-examination of the officers. In response, Judge Suddock ordered the State to make the officers available for an interview with Proctor's attorney.

Proctor objected again before the officers were called to the stand on the basis that the officers did not have a proper knowledge of Proctor's reputation when he was out of custody. He argued that prison is a unique atmosphere and that the officers' knowledge of Proctor's conduct in custody would not be an accurate foundation for testimony about his reputation.

The judge stated that he understood Proctor to be arguing that opinion testimony by a prison official is never admissible because people behave differently in prison. The judge overruled this objection, explaining that Proctor could explore the witnesses' limited knowledge on cross-examination. Proctor argued that cross-examination would necessarily reveal the prejudicial information that he had been incarcerated prior to his trial. But he did not raise any other objections to the foundation for the officers' testimony.

The testimony was very brief. Each officer testified that he knew Proctor (without specifying the basis for that acquaintance), and that Proctor had a tendency to be violent.

On appeal, Proctor again argues that the testimony of the correctional officers should not have been admitted as evidence of his reputation. We review the trial court's decision to admit this evidence for an abuse of discretion.[3]

Because Proctor raised the issue of self-defense, the State was allowed to introduce evidence of his character for violence under Alaska Evidence Rule 404(a)(2): "[E]vidence of a relevant character trait of an accused" is admissible "to rebut evidence that the victim was the first aggressor." Thus, although character evidence is generally inadmissible, such evidence was admissible in this case to rebut Proctor's testimony that Lamar was the first aggressor.

Evidence Rule 405 provides:

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation in any community or group in which the individual habitually associated or by testimony in the form of an opinion.

Accordingly, the State was entitled to introduce evidence of Proctor's reputation in any community or group in which he habitually associated to rebut Proctor's claim that Lamar was the first aggressor.

Evidence Rule 405 allows a broader scope of reputation evidence than the corresponding federal rule. The Commentary to Rule 405 explains:

> The Federal Rule, on which this Rule is modeled, does not indicate the scope of reputation evidence. This rule fills a gap left in the Federal Rule by clearly stating that reputation evidence is not confined to the community in which the defendant lives; reputation where the defendant works, goes to school or in a group with whom the defendant habitually associates will suffice.[4]

Accordingly, even assuming that a correctional facility cannot properly be considered a "community," the correctional officers' testimony would still be admissible if related to Proctor's reputation among a "group" with whom he habitually associated.

Cases from other jurisdictions reach differing conclusions on whether a correctional facility is an appropriate "community" for the purpose of reputation evidence. In 1876, the New York Court of Appeals held that it was permissible to allow witnesses to testify about a decedent's good reputation in prison.[5] The court explained:

---

3. *See Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980).

4. Commentary to Alaska Evid. R. 405, p. 508 (2009–10) (internal citations omitted).

5. *Thomas v. People*, 67 N.Y. 218 (N.Y.1876).

It matters not that the witnesses had only known the deceased in the prison; . . . a man can have a general character there as well as elsewhere; and it is just as competent for witnesses to speak of that character there where they have become acquainted with it, as at any other place.[6]

A hundred years later, the court continued to follow this reasoning, stating that "[a] reputation may grow wherever an individual's associations are of such quantity and quality as to permit him to be personally observed by a sufficient number of individuals to give reasonable assurance of reliability." [7]

The Oregon Court of Appeals also followed similar reasoning, noting:

Under the current trend of the law, the question is not whether the county jail was the defendant's "community" in the restricted sense of his place of residence, but rather whether defendant's reputation was general and established in a substantial community of people so that general reputation evidence obtained from that source would, in the judgment of the trial court, provide trustworthy evidence of defendant's general reputation for truth and veracity.[8]

The court concluded that "the fact that the 'community' was located in a county jail does not render the evidence of defendant's reputation there inadmissible as a matter of law." [9]

The Texas Court of Appeals has also held that a correctional center could be recognized as a "community" for purposes of reputation evidence.[10] But the supreme courts of Florida and Washington have determined that correctional facilities are not sufficiently neutral or sufficiently generalized to be recognized as communities.[11] And the Oklahoma Court of Criminal Appeals concluded that the population of a county jail was too transient to be recognized as a "community." [12]

In summary, some courts have allowed evidence of an individual's reputation in prison, even under the narrower requirement that the evidence must refer to the reputation in a particular "community," and some courts have not. However, the scope of Alaska Evidence Rule 405 is broader than the rules applied in those cases because the Alaska rule allows evidence of a person's reputation not only within a "community," but also within any "group with whom the defendant habitually associates." A reasonable judge could, therefore, conclude that a prison satisfies the broader Alaska rule: a prison population could be a group with whom a prisoner habitually associates. We conclude that the trial judge in this case did not abuse his discretion when he allowed the prosecution to present character evidence based on Proctor's reputation in prison.

### Proctor's Right to Confrontation Was Not Violated by Allowing the Correctional Officers to Testify.

The judge explained that Proctor could use cross-examination to show that the officers' knowledge of Proctor's reputation was limited to his reputation in prison. Proctor now argues that he was denied the right to confront the officers because he could not cross-examine them about their knowledge of his reputation without revealing to the jury that he was incarcerated. Proctor raises this confrontation issue for the first time in this appeal, so we review the issue for plain error.[13]

The federal and state constitutions guarantee the defendant in a criminal case the right

6.  Id. at 224.

7.  People v. Bouton, 50 N.Y.2d 130, 428 N.Y.S.2d 218, 405 N.E.2d 699, 704 (1980) (citing 5 Wigmore on Evidence, § 1616 (Chadbourn rev., 1974)).

8.  State v. Miller, 52 Or.App. 335, 628 P.2d 444, 448 (1981).

9.  Id.

10.  Palmer v. State, 716 S.W.2d 174, 176 (Tex. App.1986).

11.  Parker v. State, 458 So.2d 750, 753–54 (Fla. 1984); State v. Lord, 117 Wash.2d 829, 822 P.2d 177 (1991) (citing Parker, 458 So.2d at 753–54).

12.  Ferguson v. State, 675 P.2d 1023, 1027 (Okla. Crim.App.1984).

13.  See Clark v. State, 953 P.2d 159, 165 (Alaska App.1998).

to confront the witnesses against him.[14] The right to confrontation is violated when a trial court unduly restricts a defendant's cross-examination of a witness.[15]

Proctor argues that his right to confrontation was violated because he was unable to meaningfully cross-examine the correctional officers without revealing to the jury that he was incarcerated before trial. He relies on two Alaska cases to support his argument. In the first case, the trial court ordered that a defendant could not question another suspect's wife about her husband's statement admitting that the husband committed the murder (based on the marital communications privilege).[16] The supreme court held that "when conflict is found between the constitutional right of confrontation and the exercise of a privilege based on public policy, the constitutional right must control." [17]

In the second case, the defendant was accused of molesting a foster child.[18] The trial court barred the defendant from suggesting that he told the victim that she would no longer be allowed to stay in his home because she had molested another child.[19] This court reversed the conviction, explaining that this restriction on the cross-examination prevented the defendant from showing that the victim had a motive to fabricate her claims.[20]

Both of these cases involved an actual restraint on the defendant's ability to cross-examine a witness. But in Proctor's case, there was no such restraint imposed by the trial court. Proctor was given the opportunity to cross-examine the officers, and the extent to which he cross-examined them was a tactical decision. As the trial court explained:

At the end of the day, it's not the State that's making the call about whether it's more advantageous than disadvantageous to cross-examine on the circumstances. That's you. You have the choice whether or not you think it advantages you on balance to go into that. I agree, it's a difficult choice. It's a trade-off of values, but that's a dilemma that your client has put you into by his conduct.

Because his decision to forego a more thorough cross-examination of the officers was a tactical decision, Proctor cannot show that the trial court committed a plain error.

### Proctor's Due Process Rights Were Not Violated by Lamar's Testimony.

■ Proctor argues that his due process rights were violated when Lamar was allowed to testify with diagrams she created after she observed Putnam's testimony. When Lamar testified at trial, she relied on diagrams she drew that showed the layout of Proctor's apartment and chronologically depicted the conduct of Proctor, Putnam, and Lamar. Defense counsel objected to the diagrams on the basis that Lamar had created them after she was present for Putnam's testimony. The trial judge overruled the objection and the drawings were admitted into evidence.

The Alaska Constitution provides that crime victims have the right "to be present at all criminal or juvenile proceedings where the accused has the right to be present." [21] But Proctor argues that due process may be implicated when an unsequestered witness tailors her testimony to corroborate the testimony of a previous witness. Proctor cites two cases for this proposition.

---

**14.** *See Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Stumpf v. State,* 749 P.2d 880, 900–01 (Alaska App.1988).

**15.** *See Davis,* 415 U.S. at 315–19, 94 S.Ct. at 1110–12.

**16.** *Salazar v. State,* 559 P.2d 66, 76–78 (Alaska 1976).

**17.** *Id.* at 79.

**18.** *Daniels v. State,* 767 P.2d 1163, 1164 (Alaska App.1989).

**19.** *Id.* at 1165.

**20.** *Id.* at 1166–67.

**21.** Alaska Const. art. 1, § 24. Alaska Evidence Rule 615(4) provides a corresponding exception to the rule on exclusion of witnesses for "the victim of the alleged crime ... during criminal ... proceedings when the accused has the right to be present."

In the first case, the Ninth Circuit noted that "[n]either this court nor the Supreme Court has ever held that the failure to exclude witnesses can violate due process."[22] The court concluded that it was not required to decide whether the failure to exclude witnesses may be a due process violation because there was no evidence that the decision had adversely affected the defendant's trial.[23] In other words, the Ninth Circuit expressly stated that it was not resolving the question that Proctor raises.

In the second case that Proctor relies on, the petitioners argued that the tax court erred in failing to sequester witnesses pursuant to Federal Evidence Rule 615, which requires the court to exclude witnesses when they are not testifying.[24] The Sixth Circuit concluded that the petitioners had failed to show that the judge's error harmed their case because there was no evidence that the witnesses had "tailored their testimony" other than the fact that the witnesses had heard the previous testimony.[25] This case does not suggest that failure to exclude a witness implicates a party's due process rights.

This court has previously recognized that the Due Process Clauses of the state and federal constitutions do not grant a general right to exclude witnesses from the courtroom during the testimony of other witnesses.[26] Moreover, Article I, Section 24 of the Alaska Constitution expressly grants crime victims "the right to ... be allowed to be present at all criminal or juvenile proceedings where the accused has the right to be present." We accordingly hold that a trial judge may allow the victim of an alleged crime to remain in the courtroom while other witnesses are testifying (even though the victim has not yet testified), as long as the defendant is allowed to cross-examine the victim regarding any potential influence on the victim's testimony.

In Proctor's case, Judge Suddock could reasonably conclude that Lamar should be allowed to testify and to offer the diagrams that she prepared, even though she was present in the courtroom when Putnam testified.

### Proctor Did Not Establish That He Committed This Offense Under Duress.

■ Proctor proposed a mitigating factor, contending that he "committed the offense under some degree of duress, coercion, threat, or compulsion insufficient to constitute a complete defense, but that significantly affected [his] conduct."[27] Proctor noted that he was convicted for the conduct that occurred while Lamar was attempting to leave his apartment. Proctor's theory was that he continued to kick Lamar in the hallway because he believed she was trying to access a knife in her belt. Proctor pointed to the fact that a knife was recovered from Lamar as she was put into an ambulance.

Judge Suddock rejected this argument, explaining that the mitigator did not apply because Proctor had not "shown by clear and convincing evidence that this [case] involved a self defense component." Explaining his sentencing rationale, the judge stated:

> I find no evidence, and I do not believe, that this was a self defense case. I think this was a case brought about by blinding, impetuous rage on the part of Mr. Proctor over some real or imagined provocation that he perceived at that time, and he decided that it was an appropriate time to give a couple of smaller and relatively defenseless women a very thorough beating over a period of time.

■ Proctor argues that the judge's comment that the "case [was] brought about by blinding, impetuous rage on the part of Mr. Proctor over some real or imagined provocation" was a finding that Proctor was provoked. Proctor argues that the mitigating factor was established by this comment be-

**22.** *Larson v. Palmateer,* 515 F.3d 1057, 1065 (9th Cir.2008).

**23.** *Id.*

**24.** *William L. Comer Family Equity Pure Trust v. Comm'r of Internal Revenue,* 958 F.2d 136, 140 (6th Cir.1992).

**25.** *Id.* at 141.

**26.** *Landon v. State,* Memorandum Opinion and Judgment No. 3975 (Alaska App., Feb.3, 1999), 1999 WL 46543, *2 (internal citations omitted).

**27.** AS 12.55.155(d)(3).

cause the legislature intended that AS 12.55.155(d)(3) be read broadly.[28] We review the superior court's factual findings for clear error and independently assess whether these facts establish this mitigating factor.[29]

[redacted] "In order for a defendant to establish the mitigating factor that he acted under compulsion, the compulsion must be of a sufficiently extraordinary nature that it approaches being a defense to the crime."[30] But when we read Judge Suddock's comment in context, it is apparent that he was explaining that this was not a self-defense case and that there was no justification for the attack. Judge Suddock's findings are not clearly erroneous, and we agree with his conclusion that Proctor did not establish that he committed this offense under duress or coercion.

***Conclusion***

We AFFIRM the superior court's judgment and sentence.

[redacted]

28. *See Bell v. State,* 658 P.2d 787, 791 (Alaska App.1983) ("Evidence the defendant in good faith subjectively believed facts which if true would have established one of the defenses justifying his conduct under the revised code . . . may warrant mitigation of a presumptive sentence.").

29. *See Michael v. State,* 115 P.3d 517, 519 (Alaska 2005).

30. *Bynum v. State,* 708 P.2d 1293, 1294 (Alaska App.1985).