**Josiah DARROUX, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10658.**

Court of Appeals of Alaska.

Nov. 10, 2011.

Jane B. Martinez, Anchorage, for the Appellant.

Mary A. Gilson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

In May 2007, during a confrontation at a barbecue, Josiah Darroux shot and killed James Brink, his girlfriend's cousin. Based on this incident, Darroux was indicted for second-degree murder. At the conclusion of Darroux's trial, the jury found that he had acted in the heat of passion, and so the jury convicted Darroux of the lesser offense of manslaughter.

In this appeal, Darroux does not contest his conviction, but he raises several issues dealing with his sentencing. Darroux asserts that the superior court should have struck, or at least greatly abridged, the section of the pre-sentence report describing the facts of his offense. Darroux also contends that the superior court committed error by rejecting four mitigating factors that he proposed.

For the reasons explained here, we conclude that Darroux failed to preserve his objection to the contents of the pre-sentence report. We further conclude that, given the facts of Darroux's case, the superior court correctly rejected each of Darroux's four proposed mitigating factors, and we therefore affirm the superior court's sentencing decision.

*Darroux's challenge to the pre-sentence report*

Prior to Darroux's sentencing, his attorney filed an objection to various aspects of the pre-sentence report—in particular, the 28–page section of the report labeled "Present Offense". Darroux's attorney claimed that this section of the report was too long, and that it improperly relied on the hearsay contained in the police reports, rather than describing the testimony given by the witnesses at Darroux's trial.

At the sentencing hearing, Darroux's attorney raised these objections again:

*Defense Attorney:* [T]he overall objection I have to this pre-sentence report is that it's an extremely lengthy document[.] ... [And] much of it doesn't have helpful information [for] the Court. And it's triggering the need for an evidentiary hearing [at] sentencing—which is truly unnecessary for this Court's sentencing decision. This Court heard the testimony at trial.

*The Court:* I did [hear the trial testimony], and that's what I'm going to (indiscernible).

*Defense Attorney:* That's what the Court ...

*The Court:* Right.

*Defense Attorney:* Okay.

Although the defense attorney's response of "okay" seemingly indicated that she was content with the sentencing judge's approach, the defense attorney returned to this issue a few minutes later. She again suggested that the description of the offense in the pre-sentence report did not conform to the testimony of the witnesses at trial.

The defense attorney told the sentencing judge that she had asked the pre-sentence investigator to listen to the testimony of the trial witnesses so that the investigator would "understand that [the information contained in] many of the police reports didn't reflect what actually came out at trial." The defense attorney then asserted that the pre-sentence investigator had failed to honor her request, and she asked for the sentencing judge's help in "[altering] this officer's approach to pre-sentence reports, so that we get a better pre-sentence report for the Court." The sentencing judge, Superior Court Judge Michael R. Spaan, responded, "Okay. And, again . . . , what I'm going to rely on is the trial [testimony]. Okay?"

During the ensuing discussion, Judge Spaan addressed the defense attorney's challenges to a number of specific factual assertions contained in other portions of the pre-sentence report (*i.e.,* sections other than the "present offense" section), and the judge made several changes to the report at the defense attorney's request. But the defense attorney made no further objection to the content of the "present offense" section of the report, and she never indicated that she was dissatisfied with Judge Spaan's general resolution of the issue—*i.e.,* his declaration that he would rely on the trial testimony rather than the description of the offense in the pre-sentence report.

We further note that, to the extent Darroux's attorney may have wished to object to particular factual assertions contained in the "present offense" section of the report, she failed to comply with the procedures specified in Alaska Criminal Rule 32.1.

Subsection (d)(5) of Rule 32.1 requires a defendant to "give notice [before the sentencing hearing] of any objection to any information contained in the presentence report or to any other material the judge or the state has identified as a source of information to be relied upon at sentencing." This subsection further requires that the defendant's notice "shall state the basis for the defendant's objection [and, if] the defendant objects to information as inaccurate, the [defendant's] notice [must] include any information upon which the defendant intends to rely to refute the objected-to information."

Darroux's attorney told Judge Spaan that the "present offense" section of the pre-sentence report was "extremely lengthy", and she objected that its description of Darroux's offense rested on hearsay pulled from the police reports rather than on the testimony given at Darroux's trial. But at no point did the defense attorney claim that there was a factual inaccuracy in any particular aspect of the pre-sentence report's description of Darroux's present offense.

If Judge Spaan *had been* confronted with additional particularized objections to the content of the report, this would have triggered his duty under Rule 32.1(f)(5) to consider those factual disputes and to modify the pre-sentence report accordingly.[1] But instead, Judge Spaan was simply confronted with the general assertion that it was wrong for the pre-sentence investigator to rely on the police reports rather than the trial testimony when writing the description of the offense. And when Judge Spaan assured the defense attorney that he would rely on the trial testimony when making his sentencing

---

1. Criminal Rule 32.1(f)(5) states (in pertinent part):

The court shall enter findings regarding any disputed assertion in the presentence report. Any assertion that has not been proved shall be deleted from the report; any assertion that has been proved only in part shall be modified in the report. Alternatively, if the court determines that the disputed assertion is not relevant to its sentencing decision[,] so that resolution of the dispute is not warranted, the court shall delete the assertion from the report without making any finding. After the court has made the necessary deletions and modifications, the court's corrected copy shall be labeled the "approved version" of the presentence report.

decisions, the defense attorney said "okay" and did not pursue her objection any further.

This Court has repeatedly held that it is proper for a sentencing judge to rely on verified hearsay information contained in a pre-sentence report unless the defendant offers testimony to dispute that information.[2] Accordingly, Judge Spaan was authorized to consider the description of the offense contained in Darroux's pre-sentence report unless and until Darroux offered testimony to show that the description was false or inaccurate in one or more ways.

Potentially, Darroux might have satisfied this testimonial obligation by relying on the testimony of the witnesses at his trial, assuming that the parties' motivation to cross-examine these witnesses was the same at trial as it would have been at the sentencing hearing. But we need not decide this issue, because Darroux never objected to any specific factual assertion contained in the pre-sentence report's description of his offense.

For these reasons, we conclude that Darroux failed to preserve his current argument that Judge Spaan should have struck or greatly abridged the "present offense" section of the pre-sentence report.

### The superior court's rulings on Darroux's proposed mitigating factors

As we explained at the beginning of this opinion, Darroux was charged with second-degree murder, but he was convicted of the lesser offense of manslaughter, based on the jury's conclusion that he acted in the heat of passion.[3]

Manslaughter is a class A felony and Darroux, as a first felony offender, was subject to a presumptive sentencing range of 7 to 11 years' imprisonment.[4]

At sentencing, Darroux argued that his presumptive sentence should be mitigated under four provisions of AS 12.55.155(d): mitigator (d)(3)—the contention that he acted "under some degree of duress, coercion, threat, or compulsion"; mitigator (d)(4)—the contention that Darroux was a youthful offender whose conduct was "substantially influenced by another person more mature than [he]"; mitigator (d)(7)—the contention that "the victim provoked the crime to a significant degree"; and mitigator (d)(9)—the contention that Darroux's conduct was "among the least serious conduct included in the definition of the offense."

Judge Spaan rejected all four of these mitigating factors. That is, the judge found that Darroux had failed to prove these mitigators by clear and convincing evidence.[5]

On appeal, Darroux argues that Judge Spaan committed error when he rejected these four mitigators. To explain our resolution of Darroux's claims, we must describe the facts of Darroux's offense (viewed in the light most favorable to Judge Spaan's rulings).

### (a) The underlying facts of the homicide

Darroux began dating Olianne Tinker in 2005. In May 2007, Darroux hit Tinker during an argument. Tinker called her cousin, James Brink, to tell him about this assault.

Soon afterwards, Brink called Tinker and invited her and Darroux to attend a barbecue at his apartment. Tinker decided that she would go to the barbecue alone because she was afraid that Brink "would do something to [Darroux]."

Darroux dropped Tinker off at the barbecue and left. Around 6:00 or 7:00 that eve-

---

2. *See, e.g., Garland v. State,* 172 P.3d 827, 829 (Alaska App.2007); *Evans v. State,* 23 P.3d 650, 652 (Alaska App.2001); *Hamilton v. State,* 771 P.2d 1358, 1361–62 (Alaska App.1989).

3. See AS 11.41.115, which defines the defense of "heat of passion", and which provides that a defendant who commits a homicide in the heat of passion can not be convicted of first-degree murder under AS 11.41.100(a)(1), nor second-degree murder under AS 11.41.110(a)(1), but can be convicted of manslaughter or another crime.

4. *See* AS 11.41.120(b) (classifying manslaughter as a class A felony) and AS 12.55.125(c)(2) (specifying a presumptive sentencing range of 7 to 11 years' imprisonment for first felony offenders convicted of a class A felony if they caused a person's death during the commission of the offense).

5. See AS 12.55.155(f)(1), which specifies that a defendant must prove mitigating factors by clear and convincing evidence.

ning, Tinker called Darroux and asked him to pick her up from the barbecue. According to Tinker, she wanted to go home so that she would be ready for work, and her cousin, Brink, was getting "pretty drunk".

When Darroux arrived to pick up Tinker, he parked his vehicle in the parking lot on the side of Brink's apartment building, and then he went inside. Brink approached Darroux and asked to speak with him, so the two men went outside and down a flight of stairs. Tinker followed them.

Tinker saw Brink take hold of Darroux, lift him in the air, and strike him several times. During this attack, Darroux's head hit a cement wall. Tinker came to Darroux's assistance and began choking her cousin. At this point, Darroux freed himself from Brink's grasp and ran toward his car. Tinker followed.

When Tinker reached Darroux's vehicle, she saw that the trunk was open and that Darroux had a shotgun in his hand. Tinker persuaded Darroux to put the weapon away, and Darroux and Tinker got into the car. Darroux put the car in reverse and began backing up, but then he stopped. Darroux and Tinker began arguing, because Tinker was angry that Darroux had brought the shotgun. (Darroux normally did not carry the shotgun in his car.)

At this point, Brink came running toward Darroux's car. Despite Tinker's efforts to dissuade him, Darroux got out of the car. As Brink got nearer the car, Darroux opened the trunk and again retrieved his shotgun.

When Brink continued to come toward the car, Darroux yelled at him, "Stop or I'll shoot." Darroux then fired a shot in Brink's direction. Undeterred, Brink continued to approach Darroux. When Brink was three or four feet away from Darroux, Darroux fired a second shot. This time, he struck and killed Brink.

Brink was bigger than Darroux: he was approximately 6 feet tall, while Darroux was about 5′8″, and Brink was more heavily built. On the other hand, Brink's hands were visible throughout the encounter, and he was carrying no weapon. Moreover, nothing prevented Darroux from simply staying in his car and continuing to drive away.

Darroux was indicted for second-degree murder under AS 11.41.110(a)(1). That is, the State alleged that when Darroux shot Brink, either he acted with the intent of causing serious physical injury to Brink or he knew that his conduct was substantially certain to cause death or serious physical injury to Brink.

The jury found Darroux guilty of manslaughter under the theory that (1) Darroux acted in the heat of passion, and that (2) this passion resulted from Brink's "serious provocation", as defined in AS 11.41.115(f)(2).

(AS 11.41.115(f)(2) defines "serious provocation" as any conduct other than insulting words, gestures, or hearsay reports of the victim's prior conduct "which is sufficient to excite an intense passion in a reasonable [and sober] person in the defendant's situation, ... under the circumstances as the defendant reasonably believed them to be".)

*(b) Darroux's proposed mitigating factors*

■ Addressing Darroux's proposed mitigators in numerical order, the first one is mitigator (d)(3)—the contention that Darroux shot Brink "under some degree of duress, coercion, threat, or compulsion". This Court has previously explained that this mitigator requires proof of a degree of duress, coercion, or compulsion "sufficiently extraordinary [in] nature that it approaches being a defense to the crime." [6]

When Judge Spaan ruled on this mitigator, he acknowledged that the homicide was preceded by an altercation in which Brink assaulted Darroux. However, Judge Spaan declared that "[he did] not find by clear and convincing evidence that there [was] ... any threat or coercion which justified shooting an unarmed man."

Given the facts of Darroux's case, and given the jury's verdict that Darroux's crime

---

**6.** *Proctor v. State,* 236 P.3d 375 (Alaska App. 2010), citing *Bynum v. State,* 708 P.2d 1293, 1294 (Alaska App. 1985).

should be mitigated to manslaughter because he acted in response to serious provocation, one might reasonably argue that Darroux was legally precluded from raising mitigator (d)(3). This argument would be based on AS 12.55.155(e), which declares that a defendant's presumptive sentencing range can not be lowered based on a "[mitigating] factor [that was] raised at trial as a defense reducing the offense charged to a lesser included offense".

But to the extent that Darroux was still entitled to plead mitigator (d)(3), the record supports Judge Spaan's decision to reject this mitigator.

Darroux argues that, given the facts of his case, his act of shooting Brink came "very close" to self-defense. But when we view the facts of the case in the light most favorable to Judge Spaan's decision, Darroux's argument is untenable.

The evidence at trial showed that, following Darroux's initial confrontation with Brink, Darroux and Tinker got into Darroux's car, and Darroux had a clear opportunity to drive away. Instead of taking advantage of this opportunity, Darroux stopped driving and—despite Tinker's efforts to dissuade him—he got out of his car, retrieved his shotgun from the trunk, and confronted Brink with this weapon.

It is true that Brink continued to approach Darroux despite Darroux's requests for him to stop. However, it is undisputed that Brink was obviously unarmed.

Based on this evidence, Judge Spaan could properly conclude that Darroux failed to prove, by clear and convincing evidence, that his act of shooting Brink was the result of extraordinary duress, coercion, or compulsion that approached a defense to homicide. We therefore uphold Judge Spaan's decision on mitigator (d)(3).

■ We turn next to mitigator (d)(4)—the contention that Darroux was a youthful offender whose conduct was "substantially influenced by another person more mature than [he]". Darroux argues that this miti-gator applies to his case because Brink was older and more mature than Darroux, and because Brink "manipulated the younger Darroux into having contact with him" so that he could then attack Darroux.

Initially, we doubt that the legislature intended mitigator (d)(4) to apply to situations where the victim of a homicide or an assault engaged in conduct that substantially influenced a youthful offender to attack the victim. Interpreting mitigator (d)(4) in this manner would seemingly bring it into conflict with the legislature's policy—embodied in the heat of passion statute and in aggravating factor AS 12.55.155(c)(6)—that the sentencing ranges for homicides and non-deadly assaults should not be reduced based on conduct that the victim directed to the defendant unless the victim's conduct rose to the level of "serious provocation". Moreover, it appears that, under Darroux's proposed interpretation of mitigator (d)(4), either this mitigator would be redundant of mitigator (d)(3) (the mitigator for "duress, coercion, threat, or compulsion"), or it would undercut mitigator (d)(3).

The wording of mitigator (d)(4) suggests that the legislature had another type of situation in mind: situations where an older and more mature person enlisted the aid of a youthful defendant in committing a crime, or otherwise encouraged a youthful defendant to commit a crime. Our previous cases involving mitigator (d)(4) have dealt with situations where an older, more mature individual prevailed on a youthful, less mature person to help them commit a crime.[7]

In any event, Darroux does not assert that Brink wanted to be shot and killed, or that Brink purposely manipulated or encouraged Darroux to kill him. Obviously, the jury found that Darroux's actions were significantly influenced by Brink's actions, but this influence took the form of provocation or, alternatively, it took the form of duress, coercion, threat, or compulsion—issues that we have already addressed.

**7.** *See Valadez v. State,* unpublished, 2000 WL 177584 at *1 (Alaska App.2000); *Melton v. State,* unpublished, 1999 WL 575797 at *4 (Alaska App. 1999); *Arnold v. State,* unpublished, 1999 WL 46544 at *10 (Alaska App.1999).

For these reasons, we uphold Judge Spaan's ruling that, for purposes of mitigator (d)(4), Darroux was not under the influence of Brink when he shot and killed him.

■ Darroux's next proposed mitigator is (d)(7)—the contention that the victim of the homicide, Brink, "provoked the crime to a significant degree".

In *Smith v. State*, 229 P.3d 221 (Alaska App.2010), we examined and compared mitigators (d)(6) and (d)(7). Mitigator (d)(6) deals with instances where the defendant's crime resulted from "serious" provocation. Mitigator (d)(7), on the other hand, requires proof of only a "significant" provocation—a lesser standard.

In *Smith*, based on the wording of mitigators (d)(6) and (d)(7), we concluded that the legislature did not intend for mitigator (d)(7) to apply to the felony assaults codified in AS 11.41.200–220. In other words, the fact that a defendant's conduct resulted from "significant" provocation is not a sufficient justification for reducing the defendant's presumptive sentencing range for first-, second-, or third-degree assault. Instead, the legislature intended that the sentencing ranges for these felony assaults would be mitigated only upon proof of "serious" provocation as defined in AS 11.41.115(f)(2). *Smith*, 229 P.3d at 226.

As we noted in *Smith*, this is "the same amount or degree of provocation that would reduce a murder to manslaughter under the heat of passion statute". *Id.* at 225. And, as we have already explained, the homicide in this case was already reduced from second-degree murder to manslaughter based on the jury's finding that Darroux acted in the heat of passion resulting from "serious provocation".

Based on our decision in *Smith*, and based on AS 12.55.155(e), we conclude that it would be inconsistent with the legislature's intent to allow a defendant in Darroux's situation to seek further mitigation of his sentence based on the "significant" provocation clause of mitigator (d)(7).

As we have already explained, AS 12.55.155(e) declares that a defendant's presumptive sentencing range can not be lowered based on a "[mitigating] factor [that was] raised at trial as a defense reducing the offense charged to a lesser included offense". In the present case, Darroux was acquitted of murder and, instead, convicted of the lesser offense of manslaughter because the jury agreed that Darroux's conduct was the result of "serious provocation". Accordingly, AS 12.55.155(e) expressly bars Darroux from seeking a reduction of his presumptive sentencing range based on mitigator (d)(6) (which applies to instances of "serious provocation").

It would be illogical for the legislature to prohibit Darroux and all similarly situated defendants from seeking reduction of their sentencing range for manslaughter based on the existence of "serious" provocation under mitigator (d)(6), and yet let them seek reduction of their sentencing range based on the *lesser* standard of "significant" provocation under mitigator (d)(7). Accordingly, we hold that, as a matter of law, mitigator (d)(7) can not be employed to reduce the presumptive sentencing range of defendants in Darroux's situation—that is, defendants who have successfully argued at trial that they should be convicted of manslaughter rather than murder based on a claim of heat of passion under AS 11.41.115.

■ This brings us to mitigator (d)(9)—Darroux's contention that his conduct was "among the least serious conduct included in the definition of the offense." In support of this contention, Darroux notes that the victim of the homicide was intoxicated, that he had just attacked Darroux, and that he followed Darroux out to the parking lot—where he continued to advance on Darroux, even after Darroux fired a warning shot.

These facts are essentially undisputed. However, they comprise only part of the story. According to the testimony at trial, there was absolutely no need for Darroux to stay and confront Brink. Darroux could simply have driven away; indeed, Tinker urged him to do so. Instead, Darroux got out of his car, opened his trunk, and took out his shotgun. Moreover, Judge Spaan found that Brink was unarmed, and the record supports this finding. Taking these circumstances as

a whole, we agree with Judge Spaan that this was not among the least serious heat-of-passion manslaughters.

*Conclusion*

With respect to Darroux's claim that the superior court should have deleted or substantially abridged the "present offense" section of the pre-sentence report, we conclude that this claim is not preserved. And with respect to Darroux's proposed mitigating factors, the judgement of the superior court is AFFIRMED.