Argued and submitted December 12, 1980, affirmed May 18, 1981

# STATE OF OREGON,
*Respondent,*

*v.*

# FRED RAY MILLER,
*Appellant.*

(No. 79-1341, CA 17249)

628 P2d 444

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

**WARREN, J.**

Defendant was indicted for the crime of murder. ORS 163.115(1). He pled not guilty and was tried and convicted by a jury of the lesser included offense of manslaughter in the first degree. ORS 163.118. Defendant appeals from the judgment of conviction entered upon that verdict. We affirm.

A brief summary of the relevant facts follows: On August 10, 1979, defendant and the victim, Richard Preston, spent the latter part of the evening in the same tavern; at the time of the incident that led to Preston's death, the defendant was highly intoxicated. There was evidence that Preston was a verbally antagonistic individual, that there had been a disagreement between the two men earlier in the day and that during that evening they had had a minor physical altercation inside the tavern. While the sequence of events is not clear from the record, the defendant admitted striking Preston with a two-by-four while the two men were in the alley adjoining the tavern. The defendant testified that Preston struck the first blow and that approximately two seconds later he struck Preston with the two-by-four. The body was dragged to a nearby ditch; defendant testified that he had no recollection of moving the body, but believed that he may have done so. There was evidence that defendant later told several persons that he had killed a man in the alley.

Defendant was arrested for the crime on August 11, and was incarcerated in the Coos County jail until the date of trial on January 14, 1980, with the exception of a brief period when he was transported elsewhere for a psychiatric evaluation.

The defendant first assigns error to the trial court's admission of the testimony of a deputy sheriff assigned to the Coos County jail concerning statements made by defendant while incarcerated in single-cell isolation. The statements were admitted solely for the purpose of impeaching defendant's testimony on cross-examination, in which defendant denied having any conversations with the deputy outside of "hello and stuff," while in the jail.[1]

---

[1] The relevant cross-examination of defendant was as follows:

The basis for the objection at trial and the assignment of error on appeal is that the state failed to lay an adequate foundation for the introduction of the prior inconsistent statements as required by ORS 45.610, which reads:

"A witness may be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he shall be asked whether he made the statements, and if so, allowed to explain them. If the statements be in writing, they shall be shown to the witness before any question is put to him concerning them."

■ Although ORS 45.610, first enacted in 1862,[2] sets forth specific requirements that the statement be related to the witness, along with the time, place and persons present, it is a statutory declaration of the common law, and the requirements of the statute are not to be applied inflexibly. *State v. Nortin,* 170 Or 296, 314-319, 133 P2d 252 (1942); *State v. Bartmess,* 33 Or 110, 54 P 167 (1898).

■■ Although strict compliance with the foundational requirements is a desirable practice, failure to so comply does not constitute error requiring reversal, *State v. Nortin, supra,* 170 Or at 315, and the sufficiency of the foundation is a matter for the sound discretion of the trial judge. *State v. Joseph,* 230 Or 585, 589, 371 P2d 689 (1962);

---

"Q All right, Mr. Miller, I would like, if I may, to direct your attention to a period in time in which you were incarcerated in the Coos County Jail and ask whether you recall during the period of late August, early September while you were in isolation having a conversation with a jailer?

"A I have talked to jailers, yes.

"Q Specifically Marlin Snyder?

"A The only time I spoke to Mr. Snyder, except for saying hello and stuff, is one time he took me up to Portland concerning the case and he bought me a pack of cigarettes and I paid him back a pack of cigarettes.

"Q At no other time have you conferred with him?

"A Not in isolation, no, except for hello and no long lengthy conversations, no.

"Q Ignoring the issue of isolation, did you ever have any conversations with him during which you spoke to him at length?

"A On the way to Portland."

[2] General Laws of Oregon, ch 9, § 831 (Deady 1862).

*State v. Nortin, supra,* 170 Or at 321. *Nortin* cites a line of cases in which the foundation was held sufficient despite technical deficiencies and points out that the only cases in which a trial court's admission of impeaching statements had previously been held erroneous for lack of foundation were cases in which no semblance of a foundation had been laid. *State v. Nortin, supra,* 170 Or at 319-321.

■■  The purposes of the foundational requirements are (1) to avoid unfair surprise; (2) to save time should the witness acknowledge the making of the statement, thus making extrinsic evidence unnecessary; and (3) to give the witness a chance to explain the discrepancy. McCormick, Evidence, § 37, p 72 (2d ed 1972). If the time, place and persons present are mentioned so as to call the conversation to the witness' mind so that he recalls the statement and is not misled, the foundation is sufficient. *Richie v. Pittman,* 144 Or 228, 232, 24 P2d 328 (1933).

After the defendant on cross-examination denied having any substantive conversations with the deputy while in isolation, the deputy testified that he had two or three conversations with the defendant between August 28 and September 10, while defendant was in isolation, in which defendant stated he struck the first blow.[3] The trial court carefully instructed the jury that the impeachment testimony of the deputy was to be considered only on the credibility of the defendant's testimony: "You are not to consider it as substantive evidence on the issue of guilt or innocence or any other issue in the case except the believability of the defendant."

Defendant, contending that he was improperly impeached by a prior inconsistent statement, relies solely on the claim that he was not apprised of the specific date upon

---

[3] In a pretrial omnibus hearing at which the defendant was present, the deputy had testified to these same statements. At that hearing, the time frame in which the statements were allegedly made was set as being between August 28 and September 10, while defendant was housed in single-cell isolation at the jail. The fact that the statements were made on two or three different occasions was also testified to and the statements themselves were recounted in detail. The trial court ruled that the statements were inadmissible as substantive admissions because they were not preceded by *Miranda* warnings. At that time, however, the state made it known to the court and the defendant that defendant's statements would be introduced to impeach the defendant at trial under *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971).

which the statements were allegedly made.[4] However, the record shows that the question on cross-examination specified the time as being in late August or early September, while the defendant was confined in isolation. In addition, a few days earlier at the omnibus hearing, the deputy had testified in defendant's presence that the conversations took place between August 28 and September 10, and that the statements were made on two or three different occasions within this period of less than two weeks. The deputy also testified that this was as close a time reference as he was able to make, since he had frequent conversations with the defendant during this period and was unable to pinpoint the exact dates.

■     The defendant calls our attention to *State v. McDonald,* 8 Or 113 (1879), and *State v. Miller,* 119 Or 409, 243 P 72, *aff'd* 273 US 657 (1926), where the foundation was indefinite as to circumstance of time, place or persons present, and the Supreme Court held that due to this indefiniteness, the trial court did not err in refusing to admit evidence of statements which the witness denied having made. There are two salient distinctions between the situation in the cited cases and that in the present case. First, the defendant in this case was well aware of the circumstances surrounding the making of the alleged statements and the content of the statements from the testimony at the pretrial hearing; secondly, the Supreme Court in *State v. McDonald, supra,* and *State v. Miller, supra,* was affirming the exercise of discretion by the trial court in *excluding* the statements, rather than holding that there had been an abuse of discretion, as we are urged to do here.

To hold that the trial court's ruling was an abuse of discretion because of the state's failure to apprise the defendant of the exact date and time of the conversations would constitute an unduly restrictive application of the foundational requirements in light of the facts presented in this case and we decline to do so.

Defendant's second assignment of error is that the trial court erred in admitting testimony from a sergeant at

---

[4] Defendant raises no issue on appeal concerning the substance of the cross-examination or the rebuttal testimony. He contends only that no foundation had been laid for *any* impeachment.

the Coos County jail as to defendant's poor reputation for truth and veracity within the jail. The court ruled, over defendant's objection, that the jail was a sufficient "community" for reputation testimony purposes.

■ ORS 45.600 provides, *inter alia,* that an adverse witness may be impeached by evidence that his general reputation for truth is bad.[5] When a witness' credibility is to be impeached, it must be established through evidence of general reputation at the time of the trial or at a time prior to trial that is not too remote, McCormick, Evidence, § 44, p 92, and is, by the traditional rule, limited to the community where the person resides. 5 Wigmore on Evidence, 581-583, § 1610 (Chadborn rev. 1974).

Wigmore, *supra* at § 1616, supports a liberal view of the concept of "community":

"The reason for so limiting the inquiry generally * * * is that the place in which to ascertain a man's true reputation is the place where people generally have had the best opportunities of forming a correct estimate of his character. * * * It is obvious that this may not, in every instance, be the neighborhood where a man's home is situated. * * *" Citing *Atlantic & B.R.R. v. Reynolds,* 117 Ga 47, 48, 43 SE 456 (1903).

More modern authority relates that:

"As to place, the traditional inquiry is as to general reputation for veracity 'in the community where he lives.' The object of this limitation of place is obviously to restrict evidence of repute, to reputation among the people who know him best. The limitation was appropriate for the situation in England (and less so in America) before the Industrial Revolution, where most people lived either in small towns or in rural villages. But as an exclusive limitation it would not be appropriate in this country today, where a person may be little known in the suburb or city neighborhood where he lives, but well known in

---

[5] ORS 45.600 provides as follows:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime."

another locality where he spends his workdays or in several localities where he does business from time to time. Thus, today it is generally agreed that proof may be made not only of the reputation of the witness where he lives, but also of his repute, as long as it is 'general' and established, in any substantial community of people among whom he is well known, such as the group with whom he works, does business or goes to school. The trial judge has a reasonable need of discretion to determine whether the reputation sought to be proved among the group in question meets these standards." McCormick, Evidence, § 44, p 92-93 (2d ed 1972).

Oregon decisions recite the traditional rule that a witness' character may be proved by his general reputation in the community in which he lives, but the actual determination of how broadly or narrowly the term "community" is to be defined has not been discussed in this jurisdiction.

An early New York decision held that a prison was a community for the purpose of establishing the reputation for peacefulness of a prisoner who was allegedly slain by the defendant while both were incarcerated. The court reasoned as follows:

"It matters not that the witnesses had only known the deceased in the prison; there was a large community there, and a man can have a general character there as well as elsewhere, and it is just as competent for witnesses to speak of that character there where they have been acquainted with it, as at any other place. The evidence might not be entitled to much weight, * * * but there can be no doubt of its competency." *Thomas v. People,* 67 NY 218, 224 (1876).

Under the current trend of the law, the question is not whether the county jail was the defendant's "community" in the restricted sense of his place of residence, but rather whether defendant's reputation was general and established in a substantial community of people so that general reputation evidence obtained from that source would, in the judgment of the trial court, provide trustworthy evidence of defendant's general reputation for truth and veracity.

In the present case, the testimony was that defendant's general reputation for truth and veracity was known among the inmates, trustees and staff of the jail, which had

an average daily census of 30 to 31 inmates during the four and one-half months he was incarcerated. The jail was, in fact, the defendant's residence for that period of time and he was probably in more extensive contact with the members of that "community" than he would have been in an ordinary residential neighborhood.

■     The fact that the community was small and defendant's stay there was not of long duration may affect the weight of the evidence but does not render it inadmissible. Likewise, the fact that the "community" was located in a county jail does not render the evidence of defendant's reputation there inadmissible as a matter of law. As the court in *Thomas* pointed out, the evidence of reputation while in prison may not be entitled to much weight, but it is competent. In addition, the fact that the testimony came from an officer of the state does not render it inadmissible, though that fact might also render it less credible in the eyes of the jury. Under the facts of this case, the court concluded that there was an adequate source of knowledge to produce truthworthy evidence of reputation. The trial court was within the bounds of its discretion in admitting the evidence of defendant's poor reputation for truth and veracity.

Affirmed.