Argued and submitted June 23, Affirmed December 31, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JULIO ALBERTO PANIAGUA,
*Defendant-Appellant.*

Washington County Circuit Court
D122291M; A152638

341 P3d 906

Elizabeth Daily, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Brandon Cobb, Certified Law Student, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Erin K. Galli, Senior Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment[1] convicting him of fourth-degree assault constituting domestic violence, ORS 163.160, and harassment, ORS 166.065, assigning error to the trial court's exclusion of a defense witness's testimony concerning the victim's character for truthfulness under OEC 608(1). We conclude that the trial court did not err in excluding the testimony, and affirm.

The facts are procedural and not in dispute. The state charged defendant with the above-mentioned offenses following an altercation between defendant and his ex-girlfriend, Jones, the victim in this case. At trial, Jones and defendant testified to different versions of the altercation.

Jones testified that, on the evening in question, she and defendant were outdoors arguing about defendant stealing her bicycle when defendant grabbed her by the shoulders and shook her, and told her to "shut up." Jones testified that she pushed defendant away and, when he tried to grab her, she kicked defendant in the groin and walked away, heading toward a friend's house. On the way, Jones stopped to talk to a different friend. Jones testified that defendant caught up with her and started yelling at her and eventually started swinging at her. Ultimately, defendant punched her in the chest and right arm. Jones was the only witness to testify that defendant had punched her.

Defendant's testimony was to the contrary. He admitted to having stolen Jones's bike, but testified that Jones had been the aggressor in the ensuing encounter and that she had punched and kicked at him, one kick having hit him in the groin. Defendant stated that, after Jones kicked him in the groin, he walked away, and Jones said, "You're going to regret it." Defendant testified that he never touched Jones.

Several witnesses to the altercation testified. Jones's friend testified that he had seen defendant swing at Jones but had not seen defendant hit her. Rebitzke was a

---

[1] The trial court entered a judgment convicting defendant of fourth-degree assault constituting domestic violence and shortly thereafter entered an "amended" judgment which added the conviction for harassment. Defendant appeals both judgments.

friend of defendant and had been involved in the altercation by threatening Jones with a switchblade knife. He testified that defendant had not punched Jones.

Defendant sought to impeach Jones's credibility through the testimony of Rebitzke and two other witnesses, Sullivan and Shaw. The trial court permitted Rebitzke and Sullivan to testify to their opinions that Jones was not a truthful person. The state impeached Rebitzke by eliciting testimony that he had lied to the police about his involvement in the altercation and by eliciting an admission that he had lied during his testimony. Sullivan did not testify as to his relationship with defendant or Jones and stated only that he had known Jones for six months to a year. The state impeached Sullivan's testimony with his prior conviction for theft of services.

Later in the trial, defense counsel was preparing to call Shaw as his final witness. Outside the presence of the jury, the prosecutor objected to Shaw testifying as a character witness, arguing that her testimony would be cumulative given that Rebitzke and Sullivan had already testified as to Jones's character for truthfulness. The court did not rule on the state's objection but noted that defense counsel had to demonstrate that Shaw knew Jones on a personal basis and that she had had "sufficient contact with [Jones] in the last period of time to have the opinion." Defense counsel told the court that he thought that he could establish those things. The court then called the jury back into the courtroom and defense counsel called Shaw to testify.

Shaw testified that she had known Jones for four years. Defense counsel asked Shaw whether, in those four years, she had formed an opinion as to whether Jones was a truthful person. Before Shaw could answer, the prosecutor objected that defense counsel had failed to lay a foundation for that testimony, and the court agreed, stating, "You need to have more than she's known her." In response, defense counsel sought to lay the foundation through the following line of questioning:

"[DEFENSE COUNSEL:]   How do you know her?

"[SHAW:]   I was introduced to her two weeks after I met my boyfriend.

"Q   How long ago was that?

"A   Four years ago.

"Q   And have you had contact with her in the last year?

"A   Brief, but yes.

"Q   Okay. How many times?

"A   Five or six.

"Q   Okay. Through your boyfriend?

"A   Yeah.

"Q   And in that time that you've had contact with her, have you been able to form an opinion as to her truthfulness?"

At that point, the prosecutor objected again for lack of foundation. The trial court agreed and told defense counsel that "[f]our or five times in the last year is not sufficient contact." Defense counsel then tried to establish the necessary foundation by asking Shaw additional questions about the nature of Shaw's contacts with Jones in the last year:

"[DEFENSE COUNSEL:]   Could you testify about those contacts. What kind of things have you done?

"[SHAW:]   I mean, I just kind of saw her. There was one time that we went over to her house and hung out. She was drinking and, you know. She was just—we would go over there to party, or not party. We would just kind of hang out.

"* * * * *

"Q   And you know friends that she knows?

"A   Yeah.

"Q   Hang around the same circles?

"A   Mm-hmm.

"Q   And in that hanging around the same circles, partying with her, have you formed an opinion as to her truthfulness?"

Before Shaw could answer, the prosecutor renewed her objection based on foundation. The court, again, told defense counsel that four or five times in the last year was

insufficient to establish the foundation necessary to admit the character evidence.

At that point, defense counsel told the court that he would like to make an offer of proof, and the court removed the jury from the courtroom. During the offer of proof, Shaw testified that she knew Jones through her boyfriend, who was then in the county jail for sexual crimes that he had allegedly committed against Jones. Shaw testified that she had once caught Jones lying to her about spending time with Shaw's boyfriend but did not specify when that occurred. Defendant then asked Shaw why she thought that Jones was not a truthful person:

"[SHAW:]   Because she's lied to me before, and she's lied to other people that I know before. And that's just her reputation that I know her of.

"* * * * *

"[DEFENSE COUNSEL:]   Okay. How did you form an opinion as to that reputation?

"A   Because of the people that I know and—they tell me stories about, 'Oh, she said this, and that's not true at all.' And—I don't know, how do you form an opinion.

"Q   So you've known her to lie?

"A   Yeah.

"Q   She's lied to you?

"A   Mm-hmm.

"Q   And she's lied to you about contact with your boyfriend?

"A   Yeah. And she's lied to my mom. She lied to her mom right in front of me. She lied to Michael Jones's parents about other things. She's—I mean she—she lies to get attention.

"Q   And you are prepared to testify that you don't think she's a truthful person?

"A   Yes."

After the prosecutor cross-examined Shaw, the court excused her and did not permit her to testify about her opinion of

Jones's character for truthfulness. The jury found defendant guilty of the charged offenses.

On appeal, defendant assigns error to the trial court's exclusion of Shaw's testimony. We review a trial court's exclusion of character testimony under OEC 608(1) for abuse of discretion. *State v. Maxwell*, 172 Or App 142, 150, 18 P3d 438, *rev den*, 332 Or 559 (2001). "An abuse of discretion on an evidentiary ruling by a trial court occurs when the court's ruling exceeds the range of all legally correct discretionary choices." *Id.* "In that context, 'discretion' refers to the authority of the trial court to choose among several legally correct outcomes." *Id.* at 150-51 (citing *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000)).

Defendant argues that the trial court abused its discretion when it excluded Shaw's testimony, because he demonstrated that Shaw's contacts with Jones extended over a significant length of time, were recent, and were of such a nature that Shaw had a basis for her opinion regarding Jones's character for truthfulness under OEC 608(1). The state takes the opposite view: Shaw's brief contacts with Jones and what Shaw had heard from others were insufficient for her to form an opinion about Jones's character for truthfulness that was admissible under OEC 608(1). For the reasons that follow, we conclude that the trial court did not abuse its discretion in excluding Shaw's opinion testimony.

Generally, "[e]vidence of a person's character is not admissible for the purpose of proving that the person acted in conformity" with that character trait. OEC 404(2). One exception to that general prohibition is contained in OEC 608(1), which provides:

"(1)   The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:

"(a)   The evidence may refer only to character for truthfulness or untruthfulness; and

"(b)   Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

"Thus, under OEC 608(1), the credibility of a witness may be impeached or bolstered in the form of opinion or reputation

testimony showing that the witness' character with respect to truthfulness is good or bad." *State v. Colon*, 251 Or App 714, 720, 284 P3d 589 (2012) (internal quotation marks and brackets omitted); *see* Laird C. Kirkpatrick, *Oregon Evidence* § 608.03, 511 (6th ed 2013) ("Rule 608(1) allows evidence of a witness' character for untruthfulness or truthfulness as circumstantial evidence that the witness was untruthful or truthful in giving testimony.").

Under OEC 608(1), evidence of a person's character for truthfulness may be established in two ways: (1) the character witness can testify as to the person's reputation for truthfulness in the community in which the person lives, *State v. Miller*, 52 Or App 335, 342, 628 P2d 444 (1981), or (2) the character witness can testify as to the witness's own opinion about the person's character for truthfulness. In either case, before a court will admit such evidence, the proponent must lay an appropriate foundation. *Maxwell*, 172 Or App at 152.

That foundation requires the proponent to establish the character witness's personal knowledge of the person's reputation or character. As Kirkpatrick explains:

> "A character witness, whether testifying in the form of reputation or opinion, will not be allowed to testify until a foundation has been laid showing that the witness has sufficient acquaintance with the reputation of the person in the relevant community or sufficient personal contact with the individual to have formed a personal opinion."

Kirkpatrick, *Oregon Evidence* § 608.03 at 511 (citing *Colon*, 251 Or App at 720). Additionally, the proponent must demonstrate that the contact was "sufficiently recent so that there will be a current basis for the testimony." *Id.* (citing *State v. Caffee*, 116 Or App 23, 27, 840 P2d 720 (1992), *rev den*, 315 Or 312 (1993)). Thus, "[t]he admissibility of evidence of prior character to prove present character depends on whether, in the discretion of the trial court, the contacts on which the opinion is based are frequent enough *and* recent enough to have probative value to the testimony given in court." *Maxwell*, 172 Or App at 154-55 (emphasis in original).

As we explained in *Maxwell*, under OEC 608(1), "[a] person's character with respect to truthfulness means

that person's propensity to tell the truth in all the varying situations of life." 172 Or App at 152 (internal quotation marks omitted). "Thus, under the rule, a character trait for untruthfulness is distinguishable from individual acts of untruthfulness." *Id.* Accordingly, when determining if the proponent of the evidence has laid a foundation for the character witness's opinion testimony, a trial court must consider whether the witness's contacts with the person were sufficient to allow the witness to form an opinion about the person's propensity to tell the truth in all the varying situations of life. When the witness's contacts with the person are minimal, it is less likely that those contacts will have provided the witness with an opportunity to form an opinion about the person's character, even if the witness can cite individual acts of untruthfulness. *See, e.g., id.* at 151-52 (holding that the trial court did not err in excluding testimony of a character witness who had only known the person for three weeks and whose opinion was based on a single incident in which the person had failed to disclose prior convictions on her employment application).

Here, defendant sought to elicit Shaw's testimony as to her personal opinion about Jones's character for truthfulness to impeach Jones's testimony at trial.[2] The trial court told defendant that, to do so, he had to demonstrate that Shaw knew Jones "on a personal basis" and that Shaw had "had sufficient contact with [Jones] in the last period of time to have the opinion." Shaw testified to her contacts with Jones, and, outside the presence of the jury, the court heard and evaluated Shaw's opinion of Jones's character for truthfulness and the basis for that opinion. Ultimately, the trial court ruled that Shaw's contacts with Jones over the last year were insufficient to admit her opinion testimony.

We cannot say that the trial court abused its discretion in excluding Shaw's opinion testimony. The trial court permitted defendant to make an offer of proof before ruling, and the court applied the correct legal standard in making its ruling. The record demonstrates that Shaw first met

---

[2] Although Shaw testified about Jones's reputation for untruthfulness, defendant did not argue below and does not contend on appeal that Shaw's testimony was admissible under OEC 608(1) as reputation evidence.

Jones four years before the trial, but that, in the last year, she had had "[b]rief" contact with Jones, seeing her only five or six times. The record also indicates that Shaw "just kind of saw" Jones during those times, that they were part of the same social circle, and that on one occasion Shaw and at least one other person had gone to Jones's house. There was no testimony regarding the type or frequency of Shaw's contacts with Jones in the other years since the two had met. Shaw also indicated that she had formed her opinion about Jones in part from having heard from others that Jones had lied to them. From that evidence, the trial court could properly conclude that Shaw's own brief, recent contacts with Jones—the only permissible basis for Shaw's opinion testimony—were insufficient to permit her to testify about her opinion as to Jones's character for truthfulness. *Compare Colon*, 251 Or App at 721 (holding that trial court abused its discretion in excluding opinion testimony of witness who had known the complainant his whole life and had spent "significant time" with her), *and Maxwell*, 172 Or App at 152-53 (holding that the trial court abused its discretion in excluding opinion testimony of a witness who had seen the other witness more than 40 to 50 times within a two-year period), *with Maxwell*, 172 Or App at 150-51 (holding that the trial court did not err in excluding opinion testimony of a witness who had employed the other witness for three weeks in the year before the trial). Accordingly, we conclude that the trial court did not abuse its discretion when it excluded Shaw's testimony.

Affirmed.