DEHOOG, P.J.
*445 *273 Defendant appeals a judgment of conviction entered after a jury found him guilty of strangulation and harassment. Defendant raises four assignments of error. We discuss only defendant's first assignment of error, in which he challenges the exclusion of his father's testimony regarding the alleged victim's character for untruthfulness.[1] We conclude that the trial court erred in excluding that character evidence, because defendant established a sufficient foundation for his father's testimony under OEC 608(1). That error was not harmless. Accordingly, we reverse and remand.
Because defendant was convicted following a jury trial, we view the evidence presented at trial in the light most favorable to the state. State v. Park , 140 Or.App. 507, 509, 916 P.2d 334, rev. den. , 323 Or. 690, 920 P.2d 549 (1996). In assessing whether any erroneous evidentiary ruling was harmless, however, we describe and review all pertinent parts of the record. State v. Eckert , 220 Or.App. 274, 276, 185 P.3d 564, rev. den. , 345 Or. 175, 190 P.3d 1237 (2008).
Defendant and the victim were in a relationship for about three years. On the day in question, defendant and the victim spent the afternoon at the Sandy River with a friend. About 45 minutes after their arrival, the victim became concerned that defendant-who was their designated driver-had become too intoxicated to drive. When the victim told defendant to stop drinking and tried to take a drink from him, defendant grabbed her by the throat, saying, "I'll drink if I want to," and shoved her backward. As he grabbed the victim, defendant put pressure on both sides of her throat, making it difficult for her to breath and causing her to panic.[2]
Following that struggle, the group stayed at the river in an effort to make the best of the day. But, after the victim injured her knee swimming, they decided that she should *274 go to urgent care. When the group reached defendant's car, the victim suggested that her friend drive. Defendant again became angry and yelled at the victim. The victim tried to grab defendant's keys, and he shoved her on the shoulder in response. Defendant ultimately drove to the urgent care clinic, dropping the friend off along the way.
Upon arriving at the urgent care clinic, the victim entered alone. Once inside, she called a different friend and asked her to call the police. Although she was treated only for her injured knee, the victim reported that her throat was sore. A couple of hours after she returned home, the victim saw a faint bruise on her neck that, to her, "looked like a finger mark."
While the victim was receiving treatment, Officers Snider and Durbin of the Gresham Police Department arrived to investigate her allegations of assault. The victim told Snider that her throat and neck were sore, making it painful to talk, but the officer did not observe any visible injuries or red marks on the victim's throat or shoulder. Durbin found defendant in the parking lot, appearing to be asleep in the rear cargo area of his car. Durbin and Snider opened the hatch and *446 attempted to remove defendant from the car. Defendant initially refused to cooperate with the officers' efforts to arrest him but, after Durbin used his taser to subdue him, defendant cooperated.
As a result of the victim's report, the state charged defendant with strangulation constituting domestic violence and harassment. At trial, defendant testified and acknowledged that he and the victim had argued at the river. He denied, however, having strangled or even touched the victim during their first argument. Defendant further denied shoving the victim when the two of them reached the car. The jury found defendant guilty of both offenses.
On appeal, defendant argues, among other things, that the trial court erred in excluding, under OEC 608(1), the testimony of his father, who would have testified that, in his opinion, the victim had a character for untruthfulness. For the reasons that follow, we conclude that the trial court erred in excluding that testimony, and the error was not harmless.
*275 We review a trial court's exclusion of character testimony under OEC 608(1) for abuse of discretion. State v. Paniagua , 268 Or.App. 284, 289, 341 P.3d 906 (2014). "An abuse of discretion on an evidentiary ruling by a trial court occurs when the court's ruling exceeds the range of all legally correct discretionary choices. In that context, 'discretion' refers to the authority of the trial court to choose among several legally correct outcomes." State v. Maxwell , 172 Or.App. 142, 150-51, 18 P.3d 438, rev. den. , 332 Or. 559, 34 P.3d 1177 (2001) (citing State v. Rogers , 330 Or. 282, 312, 4 P.3d 1261 (2000) ).
Generally, "[e]vidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion[.]" OEC 404(2). An exception to that general rule is found in OEC 608, which provides:
"(1) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:
"(a) The evidence may refer only to character for truthfulness or untruthfulness; and
"(b) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
"(2) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in [ OEC 609 ], may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."
Before a court may admit evidence under OEC 608(1), the proponent must lay the proper foundation. Paniagua , 268 Or.App. at 290, 341 P.3d 906. That requires the proponent to establish that the proposed witness has personal knowledge of the person's reputation or character. Id. Generally, the witness must be shown to be sufficiently acquainted with the person's reputation in the relevant community or to have had sufficient personal contact with the person to form an opinion about his or her character for veracity.
*276 State v. Colon , 251 Or.App. 714, 720, 284 P.3d 589 (2012) ; see also Maxwell , 172 Or.App. at 152, 18 P.3d 438 (upholding the exclusion of the testimony of a witness who based her opinion on one act of dishonesty, because to "hold otherwise would mean that the distinction between character traits and individual misdeeds would be obliterated"). Such contact must be sufficiently recent to provide a current basis for the testimony. State v. Caffee , 116 Or.App. 23, 27, 840 P.2d 720 (1992), rev. den. , 315 Or. 312, 846 P.2d 1161 (1993). Further, the contact must have been for a sufficient length of time to allow the witness to form a reliable opinion. Maxwell , 172 Or.App. at 151-52, 18 P.3d 438 ; see also Laird C. Kirkpatrick, Oregon Evidence § 608.03[1], 511-13 (6th ed. 2013) (discussing foundational requirements for OEC 608(1) testimony and cases applying rule).
Here, defendant sought to introduce the testimony of witnesses who were prepared to testify regarding the victim's character *447 for untruthfulness. Among them were his mother and his father. The state, in turn, intended to call a rebuttal witness to testify as to the victim's character for truthfulness. Before allowing the proposed character witnesses to testify, the trial court held OEC 104[3] hearings to determine whether there was a sufficient foundation under OEC 608(1) for each witness's testimony. After hearing the proffered testimony, the court allowed defendant's mother and the state's rebuttal witness to testify at trial, but the court excluded the testimony of defendant's father.
In his OEC 104 testimony, defendant's father stated that he had known the victim for a little over two years. Like defendant's mother, his father testified that the victim had lived with them for a period of two months, about six months earlier. During that time, he would see her daily, spending a couple of hours with her each day. More recently, the victim had worked for about three months at an ice cream shop that defendant's father owned. During that time, he continued to see her three or four times a month. When asked whether, *277 in light of that acquaintance, it was his opinion that the victim was an honest person, defendant's father replied, "I don't believe so."
On cross-examination during the hearing, the state asked defendant's father whether there were any specific incidents when he felt that the victim had been dishonest with him. He replied that the first time was when the victim had claimed to have been kidnapped and threatened so that she would not testify in a prostitution case in Arizona. The victim told defendant's father that she had an appointment with the FBI to discuss the kidnapping, but, to his knowledge, she never attended any such meeting. The second incident was when the victim was working in his ice cream shop and claimed that she had been robbed at knifepoint. Because the police never found any evidence to support the victim's report, defendant's father concluded that she had fabricated that story. The third incident occurred on the day that defendant completed inpatient substance-abuse treatment. In an act that defendant's father described as more of an instance of "poor judgment," the victim had met defendant following his return and brought marijuana.
Ultimately, the court ruled:
"I don't think this witness has sufficient foundation. In particular, * * * the relationship sounds a lot more like one in passing. And we have three inciden[ts] that he could remember. One is, frankly, not lack of truthfulness. He just even described it as poor judgment so it's really two instances. One is the prostitution ring which was last summer. It was the best guess-and the other one was also last fall.
"And I guess the thing that struck me was early on he recently-as recently as this year had her working in his shop and-and that-that just doesn't jibe with someone who feels that someone is-has-has a propensity to be untruthful, and so I'm not going to allow this witness to testify."
In light of that reasoning, the trial court refused to allow defendant's father to testify.
Defendant's mother was, however, permitted to tell the jury her opinion regarding the victim's character. When *278 asked whether, in her opinion, the victim was an honest person, defendant's mother responded, "Not particularly, no, she's not honest." In rebuttal, the state called a witness, Craig, who testified that the victim was "an outstanding, honest person" and that, over the 15 years he had known her, she had not given him any reason to believe that she was not truthful. When asked whether it was fair to say that he thought the victim had a character for truthfulness, Craig responded, "Correct."
We conclude that the trial court erred in excluding the testimony of defendant's father. Defendant established that his father had known the victim for more than two years, had lived with her for two months in *448 the recent past, and, during that period, had spent time with her daily. That relationship was no less recent or lengthy than the victim's relationship with defendant's mother, whom the trial court permitted to testify. Significantly, the father also had recently employed the victim and interacted with her in that context.
In evaluating whether the trial court's decision was an abuse of discretion, our analysis in Maxwell is instructive. 172 Or.App. at 151-53, 18 P.3d 438. In that case, we drew a distinction between two witnesses that the defendant sought to have testify about a complainant's character for untruthfulness. We upheld the trial court's exclusion of a proffered witness who had known the complainant for only three weeks and based her opinion on a single act of dishonesty. We reasoned that, to allow that witness to testify would obliterate the distinction between a person's character for being untruthful in general-which typically is admissible-and an individual act of dishonesty , which typically is not. Id. at 152, 18 P.3d 438 ; see OEC 608(2) (excluding extrinsic evidence of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness"). As to the other witness, however, we concluded that the defendant had established an adequate foundation. That witness had known the complainant for two years and had seen her at the defendant's residence more than 40 to 50 times. Maxwell , 172 Or.App. at 152-53, 18 P.3d 438. Those contacts, we held, were adequate for the witness to have formed a *279 personal opinion as to the complainant's character for truthfulness. Id . at 153, 18 P.3d 438.
Similarly, here, defendant's father had known the victim for two years. Moreover, he had not merely seen her on a frequent basis, as was the case in Maxwell , he had recently both lived with and employed the victim for significant portions of their acquaintance. Nonetheless, the trial court excluded that witness's testimony.
Notably, the trial court did not articulate why, in its view, the relationship between defendant's father and the victim was inadequate to allow him to form a personal opinion regarding her character for untruthfulness. The court did not, for example, explain that, in its view, the witness's contacts with the victim were too infrequent or remote in time to form an opinion that would have probative value for the jury. See id . at 154-55, 18 P.3d 438 (explaining factors relevant to a court's exercise of discretion under OEC 608(1) ). Instead, the court summarily characterized their relationship as "one in passing" and, seemingly, expressed its view that the specific instances that the witness described were not the sorts of things that one relies on in forming a personal opinion for truthfulness.
The trial court also appears to have relied in large part on its own assessment of the father's credibility. That is, in excluding his testimony, the court shared its view that the father's willingness to hire the victim to work for him did not "jibe" with his expressed opinion that she was untruthful. That assessment, however, was for the jury-not the trial court-and it was not a sound basis on which to conclude that the father's testimony lacked a sufficient foundation.
In light of the foregoing, we conclude that the trial court abused its discretion in excluding the testimony of defendant's father for lack of sufficient foundation. First, as our decision in Maxwell makes clear, the recent and frequent contacts between the victim and defendant's witness were sufficient for the witness to have formed an admissible opinion regarding the victim's character for untruthfulness. See id. at 152-55, 18 P.3d 438. That is, notwithstanding the court's *280 characterization of their relationship as "one in passing," we do not consider this to be a case in which the trial court reasonably could have concluded that the opinion defendant sought to introduce "was based on contacts so remote that they would not ordinarily create an impression about character[.]" Id. at 155, 18 P.3d 438. Second, to the extent that the court believed that its own credibility assessment regarding defendant's father was a relevant consideration, it relied on an erroneous legal premise in exercising its discretion. See State v. Romero (A138124) , 236 Or.App. 640, 643-44, 237 P.3d 894 (2010) (an exercise of discretion based on an erroneous legal premise does not fall within the permissible *449 range of choices). For each of those reasons, the trial court abused its discretion in excluding the testimony of defendant's father.
Having concluded that the trial court erred in excluding the father's testimony, we must still determine whether that error was harmless. "Evidential error is not presumed to be prejudicial." OEC 103(1). Rather, such an error is harmless if there is little, if any, likelihood that the error affected the jury's verdict. Maxwell , 172 Or.App. at 157, 18 P.3d 438. Only if the error is not harmless will we reverse. In this case, defendant argues that the trial court's exclusion of the OEC 608(1) testimony was not harmless because the case came down to a credibility contest between the victim and defendant. The state argues that any error would be harmless because the testimony from defendant's father would essentially be the same as that of defendant's mother, which the trial court admitted.
We agree with defendant that this case largely came down to a credibility contest between the victim and defendant. No third-party eyewitnesses testified and, other than the victim's complaint of a sore throat, there was no physical evidence to substantiate her testimony. Rather, the state relied almost exclusively on the victim's account of the day's events to prove the charges. Furthermore, both the prosecution and defense heavily emphasized the victim's credibility in their closing arguments. For example, the prosecutor argued, "if each of you believe [the victim] beyond a reasonable doubt, that testimony alone proves these charges," and then described the different aspects of the victim's testimony that, the state reasoned, made her believable and made her *281 testimony "probably the truth." Similarly, defense counsel argued that the victim was lying about what happened and emphasized the lack of corroboration and the victim's possible motive to lie. The victim's character for untruthfulness, therefore, was central to the jury's assessment of the competing versions of events.
Moreover, we are not persuaded that the testimony of defendant's father would be duplicative of that of defendant's mother, as the state contends. See, e.g. , State v. Davis , 336 Or. 19, 33-34, 77 P.3d 1111 (2003) (erroneous exclusion of evidence is more likely to be harmless when the excluded evidence would be merely cumulative of, not qualitatively different from, admitted evidence). Although defendant's mother and father both knew the victim from the time that she lived with them and as their son's girlfriend, defendant's father also knew the victim as an employee. A jury could reasonably view that additional perspective as significant. We cannot, therefore, determine that the error had little likelihood of affecting the jury's verdict; thus, the error was not harmless.
Reversed and remanded.

We reject defendant's second and third assignments of error without discussion, and our resolution of the first assignment obviates the need to discuss the fourth, in which defendant contends that the trial court erred in admitting evidence that he was uncooperative and tased by the police at the time of his arrest.

According to the victim, the friend, who did not testify at trial, did not see the incident because he was on the phone at the time.

OEC 104 provides, in relevant part:
"(1) Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination the court is not bound by the rules of evidence except those with respect to privileges."