Argued and submitted December 15, 2020; convictions on Count 1 and
Count 3 reversed and remanded, remanded for resentencing, otherwise affirmed
September 15, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALYSON RACHEL ANDERSON,
*Defendant-Appellant.*

Lane County Circuit Court
17CR78852; A171331

498 P3d 843

Defendant appeals a judgment of convictions for driving under the influence of intoxicants (DUII), ORS 813.010 (Count 1); unlawful possession of methamphetamine, ORS 475.894 (Count 2); and recklessly endangering another person, ORS 163.195 (Count 3). Defendant was arrested after a traffic stop and taken to a jail to be evaluated by a drug recognition expert (DRE). The state filed a motion *in limine* requesting that testimony concerning the officer's reputation for truthfulness or untruthfulness be excluded. The court granted the state's motion, reasoning that the officer's reputation that "half" of the officer's department believes he is truthful and "half" believe that he is untruthful, is not admissible reputation evidence, but, rather, "neutral" evidence of the officer's reputation. Defendant argues that the trial court erred in granting the state's motion. The state concedes that the court erred in excluding that evidence but argues that the error is nevertheless harmless. *Held*: The trial court erred when it excluded reputation evidence because "split reputation" evidence is reputation evidence that is admissible under OEC 608. The Court of Appeals then concluded that as to Count 2, the error was harmless. However, as to Counts 1 and 3, the court concluded that the error was not harmless because the DRE had testified as an expert on matters that were scientifically based on an issue that went to the "heart" of defendant's defense theory.

Convictions on Count 1 and Count 3 reversed and remanded; remanded for resentencing; otherwise affirmed.

Bradley A. Cascagnette, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and Egan, Chief Judge, and DeHoog, Judge.*

EGAN, C. J.

Convictions on Count 1 and Count 3 reversed and remanded; remanded for resentencing; otherwise affirmed.

_____

    * Egan, C. J., *vice* Mooney, J.

**EGAN, C. J.**

Defendant appeals a judgment of convictions for driving under the influence of intoxicants (DUII), ORS 813.010 (Count 1); unlawful possession of methamphetamine, ORS 475.894 (Count 2); and recklessly endangering another person, ORS 163.195 (Count 3). Defendant raises two assignments of error. We reject defendant's first assignment without discussion. In defendant's second assignment of error, she argues that the trial court erred in granting the state's motion *in limine* when it excluded testimony concerning an officer's reputation for truthfulness or untruthfulness. The state concedes that the court erred in excluding that evidence but argues that we should nevertheless affirm because that error is harmless. As explained below, we agree with the parties that the court erred in excluding the evidence. We further conclude that the error is harmless as to Count 2 but not harmless as to Counts 1 and 3; we, therefore, reverse and remand Counts 1 and 3, remand for resentencing, and otherwise affirm.

Evidentiary error is not presumed to be harmful, and we will affirm a defendant's conviction if there is "little likelihood" that the particular error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Although the trial court relied on a pretrial record in ruling on the motion *in limine*, we review all pertinent portions of the record in determining harmlessness. *State v. Goff*, 258 Or App 757, 765, 311 P3d 916 (2013). We summarize the record in accordance with that standard.

Defendant was driving with her child in the passenger seat when Trooper West stopped her for erratic driving. Soon thereafter, West began a DUII investigation due to defendant's driving and her "unusual" behavior. As a part of that investigation, West requested that defendant consent to field sobriety tests, which she did. After those tests, West concluded that defendant was under the influence of intoxicants and requested to search defendant's car. Defendant consented and, because defendant's son was in the passenger seat, West only searched the driver's side of her vehicle. West found a "residue" amount of drugs in defendant's

wallet, which West believed was methamphetamine.[1] West also found cannabis, cannabis concentrate, and cannabis paraphernalia. At the end of the search, West asked defendant about drug use. Defendant admitted that she had "smoked some [cannabis] earlier that night." At the conclusion of her investigation, West believed that defendant was under the influence of methamphetamine and cannabis and arrested defendant for DUII.

After defendant was arrested, officers performed a search of the rest of her car. During that search, officers found methamphetamine and methamphetamine paraphernalia inside the car. That methamphetamine weighed approximately one-half gram. After the search, defendant was transported to jail to be examined by a drug recognition expert (DRE).

Officer Stone was the DRE who responded to West's request for an evaluation of defendant. Stone performed a standard 12-step DRE evaluation of defendant at the jail.[2]

---

[1] A later forensic analysis performed by one of the state's laboratories determined the "residue" to be dimethyltryptamine (DMT), a Schedule I controlled substance.

[2] As set forth in *State v. Sampson*, 167 Or App 489, 493-95, 6 P3d 543, *rev den*, 331 Or 361 (2000), the 12 DRE protocol steps described in the National Highway Traffic Safety Administration publication, "Drug Evaluation and Classification Training Student Manual, at IV-3 to IV-22 (1993)," are as follows:

"1. A blood alcohol content (BAC) analysis is done. If the subject's BAC exceeds 0.08 percent, the DRE protocol ends.

"2. The DRE officer interviews the arresting officer to elicit information about the subject's behavioral and physical symptoms.

"3. The DRE officer conducts a preliminary physical examination: he or she checks the subject's eyes for synchronization and pupil size, checks the pulse, and asks general health questions. This step determines whether the subject is impaired by a medical condition.

"4. The DRE officer conducts four standard eye examinations developed to detect intoxication: horizontal gaze nystagmus (HGN), vertical gaze nystagmus (VGN), and lack of convergence (LOC).

"5. The DRE officer conducts four field sobriety tests: the Romberg balance test, the walk and turn test, the one leg stand test, and the finger-to-nose test.

"6. The DRE officer checks the subject's pulse, blood pressure, and body temperature.

"7. The DRE officer measures the subject's pupil size under three light conditions (near total darkness, indirect light, and direct light), and inspects the nose and mouth for signs of drug ingestion.

At the conclusion of defendant's evaluation, Stone concluded that defendant was under the influence of cannabis. Defendant was released from custody and shortly thereafter charged by information with DUII, unlawful possession of methamphetamine, and recklessly endangering another person.

Before trial, the state filed a motion *in limine* to exclude certain character evidence regarding Stone. The court held a hearing on the matter and, for purposes of determining its admissibility, defendant presented two witnesses' testimony concerning Stone's character for truthfulness. The Chief of Police for the City of Springfield, Lewis, was called first. The colloquy between Lewis and defendant concerning Stone's reputation was as follows:

> "Q   Are you generally aware of Officer Stone's reputation in the law enforcement community of other law enforcement officers and the command and administrative people in law enforcement for being truthful or not truthful?
>
> "A   Can you start with the first part of the question there again?
>
> "Q   Are you familiar with his reputation in that community for being truthful or not truthful?
>
> "A   Yes.
>
> "Q   And what is that reputation?
>
> "A   The reputation is there's some individuals that does not think he's truthful and there's others that do think he's truthful."

---

"8.  The DRE officer checks the subject's muscle tone for extreme flaccidity or rigidity.

"9.  The DRE officer inspects for injection sites.

"10.  The DRE officer conducts a focused interrogation and observation of the subject's behavior.

"11.  Considering the results of all the foregoing procedures, the DRE officer develops a formal opinion identifying the drug that the subject took.

"12.  The DRE officer obtains a urine sample for toxicological testing. The test is used to corroborate the DRE officer's opinion and to provide a learning tool for the officer."

(Footnotes omitted.) The purpose of DRE protocol evidence is "to make more probable a fact of consequence—that [the] defendant was under the influence of a controlled substance." *Id.*at 499.

The state objected to the admission of that testimony by asserting that "the fact that someone's reputation is split does not lead to that being a reputation. So if a reputation is mixed, that means he doesn't have a specific reputation in the community." In response, defendant argued that the "case law is less than 100 percent clear" but that defendant is entitled to present testimony on the matter. The court agreed with the state and concluded, as to Lewis, that he

> "basically testified that half of his department believes Officer Stone *** is truthful and half of his department believes Officer Stone is untruthful.
>
> "That strikes me as not a reputation for truthfulness or for untruthfulness. ***
>
> "I don't think it's appropriate to bring in [Lewis] to basically give us a neutral reading or interpretation of Officer Stone's truthfulness. It's not necessarily a reputation that is going to properly impeach Officer Stone."

Next, Lieutenant McKee testified as to his opinion "that[,] with regard to truthfulness and honesty[,] that unless [Stone's] written or spoken word is corroborated by video or other compelling evidence, I don't find it to be trustworthy."[3] The state did not object to McKee testifying as to his opinion of Stone but did object to McKee testifying to any specific instances that were the basis for his opinion. The court agreed with the state and concluded that McKee would be permitted to "testify to his opinion." The trial began shortly thereafter. The state's evidence included testimony by Stone about his examination of defendant and, consistent with the pretrial rulings, defendant called McKee to impeach Stone's credibility. The jury found defendant guilty on all counts. Defendant then initiated this appeal.

On appeal, defendant argues that the trial court erred in excluding Lewis's testimony concerning Stone's reputation. The state concedes that the trial court erred when it concluded that Lewis's testimony was inadmissible under OEC 608, but nevertheless argues that the error was harmless. Because, as defendant notes, we have "not directly

---

[3] McKee testified to the same at trial.

addressed" whether "split reputation" is admissible reputation evidence, we discuss that issue below and, ultimately, agree with the parties that the trial court erred.

"We review a trial court's exclusion of character testimony under OEC 608(1) for abuse of discretion." *State v. Paniagua*, 268 Or App 284, 289, 341 P3d 906 (2014). "An abuse of discretion on an evidentiary ruling by a trial court occurs when the court's ruling exceeds the range of all legally correct discretionary choices. In that context, 'discretion' refers to the authority of the trial court to choose among several legally correct outcomes." *State v. Mackey*, 290 Or App 272, 275, 414 P3d 443, *adh'd to as modified on recons*, 293 Or App 559, 429 P3d 748 (2018).

Defendant argues, and the state agrees, that "split reputation" evidence is admissible under OEC 608.[4] We agree that split reputation evidence is admissible under OEC 608, which permits reputation evidence for "truthfulness or untruthfulness." Each part of Lewis's testimony— that "some" find Stone to be truthful and others find him untruthful—would be separately admissible under OEC 608.[5] That Lewis would testify to both does not make it any less reputation evidence as allowed under the rule. The

---

[4] OEC 608 provides, in part:

"(1) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:

"(a) The evidence may refer only to character for truthfulness or untruthfulness[.]"

[5] We disagree with the trial court's characterization of Lewis's testimony as "neutral" regarding Stone's reputation for truthfulness. Rather, Lewis's testimony was split—he related that "half of his department believe[d] Officer Stone" is truthful and "half of his department believe[d] Officer Stone is untruthful." One does not cancel out the other, rendering the testimony "neutral" on the subject. Rather, the jury would be able to draw its own conclusion as to Stone's credibility from the evidence that Stone's reputation among some members of the police department was that he could not be trusted, and among others, that he was honest. In other words, the fact that his reputation was mixed goes to the weight of the evidence, not its admissibility. *Cf. State v. Miller*, 52 Or App 335, 343, 628 P2d 444 (1981) (concluding that the size of the community and the duration of time that that community had interacted with the defendant were factors that affected the "weight" of the evidence as it pertains to a defendant's reputation, not the evidence's admissibility). We therefore do not address whether truly neutral testimony as to a person's reputation—essentially that the person has no reputation in the community for either truthfulness or untruthfulness—is admissible under OEC 608.

plain text of OEC 608 requires only that the reputation be for truthfulness *or* untruthfulness. It does not require that the reputation be shared by every member of the community to be admissible under OEC 608, and we do not insert requirements into statutes that have been omitted. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is *** not to insert what has been omitted[.]"). Thus, we agree with the parties that the trial court erred in concluding that "split" or "mixed" reputation evidence is inadmissible under OEC 608.

Having concluded that the trial court erred, we must next address whether that error was harmless. "Harmless error" is a shorthand reference to Article VII (Amended), section 3, of the Oregon Constitution.[6] *Davis*, 336 Or at 27-28. That standard reduces to "a single inquiry: Is there little likelihood that the particular error affected the verdict?" *Id.* at 32. In conducting a harmless error analysis, we differentiate among the various charges against a defendant to determine, with respect to each, whether the record establishes that any error in admitting or excluding evidence was harmless. *State v. Lachat*, 298 Or App 579, 589-90, 448 P3d 670 (2019), *rev den*, 366 Or 257 (2020) (taking that approach). In determining whether the exclusion of Lewis's testimony was harmless, we consider "the nature of the error that occurred below," and the "context of the legal error." *State v. Perkins*, 221 Or App 136, 143, 188 P3d 482 (2008). Some of the factors that we rely on in our considerations are whether (1) "the excluded statements were merely cumulative of admitted evidence"; in other words, whether the evidence was "qualitatively different than the evidence that the jury heard" and (2) if "the excluded evidence goes directly to the heart of defendant's factual theory of the case." *State v. Blaylock*, 267 Or App 455, 472, 341 P3d 758 (2014), *rev den*, 357 Or 299 (2015) (internal quotation marks omitted).

---

[6] Article VII (Amended), section 3, as relevant, provides:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

        We begin with Count 2, in which the state charged defendant with unlawful possession of methamphetamine. The state argues that as to Count 2, Stone's "testimony was irrelevant," and, thus, that the trial court's failure to admit Lewis's testimony about Stone's reputation had little likelihood of affecting the verdict. We agree with the state that, as to Count 2, the error was harmless because Stone did not testify about defendant's alleged possession of methamphetamine or the searches of defendant's vehicle. Rather, the state relied on the physical evidence found in defendant's vehicle and the testimony from the officers who performed the search and seizure of the suspected methamphetamine, which was later confirmed to be methamphetamine by the state's forensic laboratory. That search occurred before Stone was involved in the case and there is no allegation at trial, nor on appeal, that he had handled the physical evidence at issue. Thus, as to Count 2, we conclude that excluding Lewis's testimony was harmless.

        We next address Counts 1 and 3, in which the state charged defendant with DUII and recklessly endangering another person.[7] In arguing that the omission of Lewis's testimony was harmless as to those counts, the state contends that Lewis's testimony was cumulative of McKee's testimony. Alternatively, the state argues that, even if Lewis's testimony is not cumulative to McKee's, that the omission of Lewis's testimony is nevertheless harmless because any impeachment effect that Lewis's testimony would have had on Stone's credibility would have been nominal because Stone's testimony was cumulative of West's. We disagree with the state and conclude that the error is not harmless as to Counts 1 and 3.

        Our harmless error analysis on Counts 1 and 3 begins with addressing whether Lewis's testimony was cumulative of McKee's. Defendant argues that Lewis's testimony

---

[7] The charge of recklessly endangering another person, as relevant here, substantially relies on whether defendant was driving under the influence of intoxicants while her child was in the passenger seat of the vehicle. Defendant does not contest that her young child was in the passenger seat, so the remaining issue for Count 1 and Count 3 is the same—was there little likelihood that the exclusion of Lewis's testimony affected the jury's finding that defendant was under the influence of intoxicants.

was "qualitatively different" than McKee's because Lewis's would have permitted the jury to infer "that members of the police community agreed with McKee's opinion." The state responds that Lewis's testimony was cumulative because the jury was "not completely ignorant of [Stone's] credibility issues." Specifically, the state argues that McKee's testimony that "unless [Stone's] written or spoken word is corroborated by video or other compelling evidence, I don't find it to be trustworthy" is qualitatively the same as Lewis's testimony that "some" individuals find Stone to be trustworthy and others do not. We disagree with the state that a single opinion as to a person's reputation is qualitatively the same or cumulative of the testimony that the person has a reputation for untruthfulness among a larger subset of the law enforcement community. Lewis stated that "some" officers do not "think [Stone's] truthful," and that testimony is different from McKee's testimony that he *alone* believes Stone to be untrustworthy. Accordingly, we conclude that Lewis's testimony is not cumulative of McKee's.

We also disagree with the state that the error was harmless because Stone's testimony was itself cumulative of West's testimony. That is, the state seems to contend that, because Stone's testimony regarding defendant's intoxication was essentially duplicative of West's testimony regarding her own observations, further impeaching Stone would have had little tendency to affect the outcome of defendant's trial. However, Stone, unlike West, testified as a DRE—an expert witness providing scientifically based testimony. *See State v. Sampson*, 167 Or App 489, 496, 6 P3d 543, *rev den*, 331 Or 361 (2000) (concluding that evidence from a DRE is scientific evidence). Moreover, evidence of the full protocol carries an "aura" of scientific reliability because of "its highly specialized certification procedure, battery of medicalized tests, and complicated end-stage analysis." *Id.* at 496-97. As we explained in *State v. Aman*, 194 Or App 463, 474, 95 P3d 244 (2004), *rev dismissed*, 339 Or 281 (2005) "[t]he potential for scientifically based evidence to exert influence on a jury is manifest." Thus, when evidence that is omitted in error potentially affects the credibility of a witness that was presented to the jury as an expert on matters that are scientifically based, it weighs heavily against a determination

that an error is harmless. *See State v. McFarland*, 221 Or App 567, 578, 191 P3d 754 (2008) ("When the source of erroneously admitted testimony is a witness presented to the jury as an expert on matters that are scientifically based, it weighs heavily against a determination that an error is harmless."). Stone's scientifically based expert testimony thus is qualitatively different than the testimony of West's, the arresting officer.

Accordingly, the testimony regarding Stone's credibility, as an expert testifying on scientific matters, is uniquely important for the jury. As DRE, Stone performed several tests and opined based upon his expertise that defendant was under the influence of an intoxicant. Those tests were done with only Stone and defendant in the room and could have easily been manipulated if Stone had decided to do so. Therefore, Stone's credibility—whether his tests and opinion are trustworthy—was important to the jury's consideration of Counts 1 and 3.

As defendant points out, the question of Stone's credibility was key to her defense theory on those counts; thus, the exclusion of Lewis's testimony, which the jury could have viewed as questioning that credibility, was also significant. Defendant's sole defense as to Counts 1 and 3 was that she was not under the influence of intoxicants. Stone's testimony focused solely on defendant being under the influence of an intoxicant—a direct contradiction of defendant's defense theory. *See Blaylock*, 267 Or App at 472 (concluding that "excluded evidence [that] goes directly to the heart of defendant's factual theory" will weigh heavily against harmlessness). Therefore, Lewis's testimony, which bore directly on Stone's credibility, was, as defendant contends, "critical to [her] defense to attack the outcome of the DRE" in that it could have supported her defense that she was not under the influence of an intoxicant. Accordingly, we reject the state's argument that the error was harmless because we conclude that Stone's testimony was not cumulative of West's.

In sum, we conclude that the trial court erred in excluding Lewis's testimony, and, because that error was

not harmless as to Counts 1 and 3, we reverse and remand defendant's convictions on those counts.

Convictions on Count 1 and Count 3 reversed and remanded; remanded for resentencing; otherwise affirmed.